**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
                                 ::

BERTRAM HIRSCH and IGOR ROMANOV, on  :
behalf of themselves and all others similarly situated, :
                                 :

               Plaintiffs,    :
                                 :       Case No. 12 Civ. 1124 (DAB)

       vs.                 :
                                 :

CITIBANK, N.A.,                :
                                 :

              Defendant.   :
-------------------------------------------------------------- X

## REPLY MEMORANDUM OF LAW OF DEFENDANT
## CITIBANK, N.A. IN FURTHER SUPPORT OF MOTION
## <u>TO COMPEL ARBITRATION AND STAY THE ACTION</u>


                               STROOCK & STROOCK & LAVAN LLP
                               180 Maiden Lane
                               New York, NY  10038-4982
                               (212) 806-5400

                               *Attorneys for Defendant*
                               *Citibank, N.A.*

May 8, 2012

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT

      PLAINTIFFS' CLAIMS MUST BE ARBITRATED ON AN INDIVIDUAL BASIS ....... 1

A.     Plaintiffs Are Parties To An Agreement To Arbitration With Citibank ............................ 1

B.     The Arbitration Agreement Is Valid And Enforceable ....................................................... 3

      1.     The Arbitrator Must Determine Any Issues Regarding Enforceability ................. 3

      2.     The Arbitration Agreement Is Not "Illusory" ...................................................... 4

      3.     The Arbitration Agreement Is Not "Voidable" ...................................................... 4

      4.     The Arbitration Agreement Is Not "Unconscionable" ........................................... 5

            a.     The Arbitration Agreement Is Not Procedurally Unconscionable ............. 5

            b.     The Arbitration Agreement Is Not Substantively Unconscionable ............ 6

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Allan v. Snow,
    51 Cal. App. 4th 1358 (Cal. Ct. App. 1996) ................................................................5

AT&T Mobility LLC v. Concepcion,
    563 U.S. __, 131 S. Ct. 1740 (2011) ............................................................... *passim*

AT&T Tech., Inc. v. Commcunications Workers of America,
    475 U.S. 643 (1986) ................................................................................................3

Bensadoun v. Jobe-Riat,
    316 F.3d 171 (2d Cir. 2003) ....................................................................................1

Bhatia v. Johnston,
    818 F.2d 418 (5th Cir. 1987) ..................................................................................3

Blau v. AT&T Mobility,
    No. C 11-00541 CRB, 2012 WL 10546 (N.D. Cal. Jan. 3, 2012) ...........................6

Boghos v. Certain Underwriters at Lloyd's of London,
    36 Cal. 4th 495 (2005) .............................................................................................4

Builders Group LLC v. Qwest Commcunications Corp.,
    No. 07 Civ. 5463 (DAB), 2009 WL 3170101 (S.D.N.Y. Sept. 30, 2009) ...............5

Captain Bounce, Inc. v. Business Finance Services,
    No. 11-CV-858 JLS (WMC), 2012 WL 928412 (S.D. Cal. Mar. 19, 2012) ..........10

Chavez v. Bank of America,
    No. C 10-653 JCS, 2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) ...........................7

Compucredit Corp. v. Greenwood,
    565 U.S. __, 132 S. Ct. 665 (2012) ........................................................................1

Coneff v. AT&T Corp.,
    673 F.3d 1155 (9th Cir. 2012) ............................................................................7, 8

Conroy v. Citibank, N.A.,
    No. 10-CV-04930 SVW, slip op. (C.D. Cal. July 22, 2011) ................................7, 8

First Options of Chicago, Inc. v. Kaplan,
    514 U.S. 938 (1995) ................................................................................................3

Grabowski v. Robinson,
    817 F. Supp. 2d 1159 (S.D. Cal. 2011)................................................................2

Green Tree Finance Corp.-Ala. v. Randolph,
    531 U.S. 79 (2000)..........................................................................5, 8, 9

Guerrero v. Equifax Credit Info. Services, Inc.,
    No. 2:11-cv-06555 PSG (PLAx), slip op (C.D. Cal. Feb. 24, 2012)................................2, 6, 8

Hadlock v. Norwegian Cruise Line, Ltd.,
    No. SACV 10-0187 AG (Anx), 2010 WL 1641275 (C.D. Cal. Apr. 19, 2010) ......................1

Huizar v. Carey,
    273 F.3d 1220 (9th Cir. 2001) .........................................................................2

In re Am. Express Merchants' Litigation
    667 F.3d 204 (2d Cir. 2012).........................................................................8, 9

JLM Industries, Inc. v. Stolt-Nielsen SA,
    387 F.3d 163 (2d Cir. 2004).........................................................................1

Kaltwasser v. AT&T Mobility LLC,
    812 F. Supp. 2d 1042 (N.D. Cal. 2011) ...........................................................7, 8

Khanna v. American Express Co.,
    No. 11 Civ. 6245 (JSR), 2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011)...................................8

Kilgore v. Keybank, National Association,
    673 F.3d 947 (9th Cir. 2012) .........................................................................5

Lavoice v. UBS Finance Services, Inc.,
    No. 11 Civ. 2308 (BSJ) (JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) ......................8, 9

Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    597 F.3d 84 (2d Cir. 2010)...........................................................................2

Manning v. Energy Conversion Devices, Inc.,
    833 F.2d 1096 (2d Cir. 1987).........................................................................2

Marmet Health Care Center v. Brown,
    565 U.S. __, 132 S. Ct. 1201 (2012).................................................................1

Meckel v. Continental Resources Co.,
    758 F.2d 811 (2d Cir. 1985)...........................................................................3

Newton v. American Debt Services, Inc.,
    No. C-11-3228 EMC, 2012 WL 581318 (N.D. Cal. Feb. 22, 2012) ...........................3

Oppenheimer & Co., Inc. v. Neidhardt,
    56 F.3d 352 (2d Cir. 1995)...................................................................................2

Ragone v. Atlantic Video,
    595 F.3d 115 (2d Cir. 2010)............................................................................5, 6

Rent-A-Center, West, Inc. v. Jackson,
    561 U.S. __, 130 S Ct. 2772 (2010).....................................................................3

Ruhe v. Masimo Corp.,
    No. SACV 11-00734-CJC (JCGx), 2011 WL 4442790 (C.D. Cal. Sept. 16, 2011).................6

Sabolsky v. Gordon Co., Inc,
    73 N.Y.2d 133 (1989) .........................................................................................5

Sanders v. Forex Capital Markets, LLC,
    No. 11 Civ. 0864 (CM), 2011 WL 5980202 (S.D.N.Y. Nov. 29, 2011) ..............................5, 6

Snap-Drape, Inc. v. Communications of Internal Revenue,
    98 F.3d 194 (5th Cir. 1996) .................................................................................9

Stobie Creek Investments LLC v. U.S.,
    608 F.3d 1366 (Fed. Cir. 2010).............................................................................9

Tractenberg v. Citigroup Inc.,
    No. 2:10-cv-03092-LS, slip op. (E.D. Pa. Sept. 1, 2011) .........................................7

STATUTES

9 U.S.C. § 4...............................................................................................................2

12 U.S.C. § 4305(c) ...................................................................................................4

Cal. Civ. Code § 1780(e) ...........................................................................................8

N.Y. Gen. Bus. L. § 349(h).........................................................................................8

## PRELIMINARY STATEMENT

Plaintiffs' Opposition to the Motion ("Opp'n") confirms that Plaintiffs must arbitrate their claims on an individual basis pursuant to the express terms of the Arbitration Agreement.[1] Plaintiffs' "kitchen sink" challenge to the validity of the Arbitration Agreement fails in all respects.  Indeed, since the Motion was filed, a California federal district court granted Citibank's motion to compel the arbitration of identical claims, thus confirming that arbitration should proceed on the claims here.[2]  For the reasons set forth in Citibank's moving brief and herein, the Motion should be granted in its entirety.

## ARGUMENT

## PLAINTIFFS' CLAIMS MUST BE ARBITRATED ON AN INDIVIDUAL BASIS

In determining arbitrability, courts consider (i) whether the parties have entered into a valid agreement to arbitrate, and, if so, (ii) whether the dispute is within the scope of the agreement.[3]  Plaintiffs challenge only the first element.  Because Plaintiffs fail to satisfy their burden for invalidating the Arbitration Agreement, it must be enforced according to its terms under the FAA.[4]

**A.    Plaintiffs Are Parties To An Agreement To Arbitration With Citibank**

A summary judgment standard applies to motions to compel arbitration under the FAA.[5] Critically, "[a] party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of [its] claim in order to precipitate the trial

---

[1]   Unless otherwise specified, all capitalized terms have the same meaning as set forth in Citibank's moving brief.

[2]   Declaration of Joseph E. Strauss, dated May 8, 2012 ("Strauss Decl."), Ex. A.

[3]   See, e.g., JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).

[4]   See, e.g., AT&T Mobility LLC v. Concepcion, 563 U.S. __, 131 S. Ct. 1740, 1748 (2011); Marmet Health Care Center v. Brown, 565 U.S. __, 132 S. Ct. 1201, 1203 (2012); Compucredit Corp. v. Greenwood, 565 U.S. __, 132 S. Ct. 665, 668-69 (2012).

[5]   Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); Hadlock v. Norwegian Cruise Line, Ltd., No. SACV 10-0187 AG (Anx), 2010 WL 1641275, at *1 (C.D. Cal. Apr. 19, 2010).

contemplated by 9 U.S.C. § 4."[6]  "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."[7]

Plaintiffs' argument that an agreement to arbitrate was never "formed" fails under both New York and California law.[8]  (Opp'n at 9-11.)  As detailed in Citibank's moving brief and accompanying declaration – made by a Citibank representative with personal knowledge of Citibank's regular office policies and procedures – both Romanov and Hirsch signed signature cards acknowledging that they would be "bound by any agreement governing [the Account]."[9] (Haslam Decl. ¶ 6, Exs. 1, 2.)  Citibank's policy to provide new customers with the Client Manual at the time deposit accounts are opened applied to Plaintiffs.  (Id. ¶¶ 8-9.)  Citibank submitted copies of Plaintiffs' signature cards and Client Manual.  (Id. ¶¶ 6-7, Exs. 1-3.)  This uncontested proof of Citibank's policies and procedures establishes a presumption that Plaintiffs received the Client Manual.[10]

Fatally, Plaintiffs offer no evidence whatsoever disputing that they received the Client Manual.  Plaintiffs' bare assertions that they "never received the Citibank Client Manual that

---

[6]   Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir. 1987).

[7]   Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995); see also Grabowski v. Robinson, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011) ("[I]t is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends."); Guerrero v. Equifax Credit Info. Services, Inc., No. 2:11-cv-06555 PSG (PLAx), slip op. at 10 (C.D. Cal. Feb. 24, 2012) ("Plaintiff's summary denial that the arbitration notices were not received, unaccompanied by any supporting evidentiary facts, [is] insufficient to raise a triable issue regarding receipt.").

[8]   Under the terms of the Agreement, New York law (in Hirsch's case) and California law (in Romanov's case) governs the determination of whether a valid agreement to arbitrate exists.  (Haslam Decl., Ex. 3 at 46.)

[9]   Notably, Plaintiffs' Complaint asserts that "Plaintiffs and each member of the Class entered into a contract with Citibank."  (Compl. ¶ 64.)  The Complaint attaches the alleged "contract," which expressly provides that "[a]ll accounts are subject to approval and applicable terms and fees."  (Id., Ex. A (emphasis added).)  The "applicable terms" of the Accounts are set forth in the Client Manual (and in California, the Client Manual and Marketplace Addendum).  (Haslam Decl. ¶ 7, Exs. 3-4.)

[10]   See Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 92 (2d Cir. 2010); Huizar v. Carey, 273 F.3d 1220, 1223 n.3 (9th Cir. 2001).

Citibank refers to in it [sic] motion to compel arbitration" (Hirsch Decl. ¶ 14; Romanov Decl. ¶ 12), are both insufficient to negate the presumption of receipt and not credible in any event given the unrebutted fact of signatures acknowledging the Agreement.[11]  Plaintiffs' argument that Citibank must provide "evidence that Plaintiffs actually received the Client Manual" is simply wrong.[12]  Accordingly, Plaintiffs fail to rebut the presumption that an agreement to arbitrate was made.[13]

**B.**    **The Arbitration Agreement Is Valid And Enforceable**

     **1.**    **The Arbitrator Must Determine Any Issues Regarding Enforceability**

The Arbitration Agreement provides that "[a]ny claim or dispute relating to or arising out of your deposit . . .  account, this Agreement, or our relationship will be subject to arbitration."  (Haslam Decl., Ex. 3 at 44.)  The term "disputes" includes "claims relating to the enforceability or interpretation of any of these arbitration provisions."  (Id. (emphasis added).) Where, as here, the terms of an arbitration agreement require that the arbitrator determine enforceability, those terms must be given effect.[14]  However, even if considered by the Court, Plaintiffs' challenge to the enforceability of the Arbitration Agreement is without merit.

---

[11]   See Bhatia v. Johnston, 818 F.2d 418, 421-22 (5th Cir. 1987) (self-serving affidavits are insufficient to call the "making the arbitration" agreement into question).

[12]   See Meckel v. Cont'l Res. Co., 758 F.2d 811, 817 (2d Cir. 1985) (personal knowledge of regular office procedures, and not actual delivery to the recipient, is required to establish presumption of receipt). Newton v. Am. Debt Services, Inc., No. C-11-3228 EMC, 2012 WL 581318 (N.D. Cal. Feb. 22, 2012), cited by Plaintiffs, is inapposite.  There, plaintiff did not receive the arbitration agreement at the time she electronically signed an on-line application.  Id. at *5.  Notably, the court found that an agreement to arbitrate was formed when plaintiff subsequently signed an application and received the agreement.  Id.

[13]   Plaintiffs' argument that the Client Manual does not "apply" to Plaintiffs' Accounts is frivolous.  (Opp'n at 12.) Both Hirsch and Romanov opened deposit accounts with Citibank.  (Haslam Decl. ¶ 3.)  The Client Manual expressly applies to Citibank deposit accounts.  (Id., Ex. 3 at 5 ("When you open a Citibank deposit account, you are agreeing that your account will be governed by this Client Manual . . . . (emphasis added.))  The Arbitration Agreement also provides that "[a]ny dispute relating to or arising out of your deposit . . . account, this Agreement, or our relationship will be subject to arbitration."  (Id. at 44 (emphasis added).)

[14]   See, e.g., Rent-A-Center, West, Inc. v. Jackson, 561 U.S. __, 130 S Ct. 2772, 2777 (2010); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-43 (1995); AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).

### 2.    The Arbitration Agreement Is Not "Illusory"

Plaintiffs argue that the Arbitration Agreement is "illusory" because Citibank may amend the terms of the Agreement.  (Opp'n at 12.)  This argument lacks any basis in law or fact.  First, as a national banking institution, Citibank may amend the terms of the Accounts.  See 12 U.S.C. § 4305(c).[15]  Second, no amendment is at issue; Plaintiffs accepted the terms of the Agreement, including the Arbitration Agreement, upon opening their Accounts.  (Haslam Decl. ¶ 6, Exs. 1, 2.)  Third, in AT&T Mobility, the Supreme Court enforced an arbitration agreement that "authorized [Defendant] to make unilateral amendments, which it did to the arbitration provision on several occasions."  131 S. Ct. at 1744.[16]

### 3.    The Arbitration Agreement Is Not "Voidable"

Plaintiffs argue that the Arbitration Agreement is "voidable" because Citibank may remove actions initially filed in small claims court to federal court and compel arbitration.[17] (Opp'n at 13.)  This argument also is baseless.  The Arbitration Agreement expressly notifies customers that "[d]isputes filed by you or by us individually in a small claims court are not subject to arbitration, so long as the disputes remain in such court . . . ."  (Haslam Decl., Ex. 3 at 44 (emphasis added).)[18]  Thus, where a valid basis for removal exists, both Citibank and the

---

[15]  The cases cited by Plaintiffs (all of which apply Texas law) do not involve banking institutions and are inapposite.  (Opp'n at 12.)

[16]  Plaintiffs' argument that the Arbitration Agreement is substantively unconscionable on this basis should be rejected for the reasons stated herein.  (Opp'n at 21.)  Furthermore, the cases cited by Plaintiffs involve employment agreements and are inapposite.  See, e.g., Boghos v. Certain Underwriters at Lloyd's of London, 36 Cal. 4th 495, 506 (2005) (state law rules for employment arbitration agreements do not extend beyond employment context).

[17]  Plaintiffs' argument that the Arbitration Agreement is procedurally unconscionable on this basis should be rejected for the reasons stated herein.  (Opp'n at 17-18.)

[18]  Plaintiffs also assert that the Arbitration Agreement cannot be "performed" because the AAA and JAMS require that consumer arbitration agreements permit any party to seek relief in small claims court.  (Opp'n at 14.)  The Arbitration Agreement does exactly that.  (Haslam Decl., Ex. 3 at 44.)  The removal of an action filed in small claims court where valid grounds for removal exist does not violate the rules of the AAA or JAMS.

customer have the right to remove an action to federal court.  Plaintiffs fail to cite any legal

support, nor is there any, for "voiding" an arbitration agreement on this basis.[19]

### 4.    The Arbitration Agreement Is Not "Unconscionable"

Plaintiffs, as the parties challenging the enforceability of the Arbitration Agreement,

"bear[] the burden of proving that the claims at issue are unsuitable for arbitration."[20]  New York

and California law require <u>both</u> procedural and substantive unconscionability before an

arbitration agreement may be invalidated.[21]  Plaintiffs prove neither of these essential elements.

### a.    The Arbitration Agreement Is Not Procedurally Unconscionable

Under New York law, procedural unconscionability requires "evidence of high pressure

or deceptive tactics, the use of fine print in the contract, and any disparity in experience and

education, *i.e.*, bargaining power, between the parties."[22]  California law requires "oppression or

surprise due to unequal bargaining power."[23]  No procedural unconscionability exists here.

<u>First</u>, Plaintiffs' argument that the Arbitration Agreement is an unenforceable "contract of

adhesion" was rejected by the Supreme Court in <u>AT&T Mobility</u>.[24]  (Opp'n at 16-17.)

---

[19]  Romanov filed a small claims court action against Citibank in California based on the same subject matter in this case.  Citibank removed the action based on federal question jurisdiction and moved to compel arbitration.  Romanov did not respond either to the removal or the motion to compel, and voluntarily dismissed the action.  (Strauss Decl., Ex. B.)  Citibank also removed a duplicative action filed by Zakmar Kats and moved to compel arbitration.  As noted above, on April 17, 2012, the Court granted Citibank's motion to compel arbitration in that case.  (<u>Id.</u>, Ex. A.)

[20]  <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 91 (2000).

[21]  <u>See</u> <u>Ragone v. Atl. Video</u>, 595 F.3d 115, 121 (2d Cir. 2010); <u>Kilgore v. Keybank, Nat'l Ass'n</u>, 673 F.3d 947, 963 (9th Cir. 2012).

[22]  <u>Sanders v. Forex Capital Markets, LLC</u>, No. 11 Civ. 0864 (CM), 2011 WL 5980202, at *5 (S.D.N.Y. Nov. 29, 2011); <u>see also</u> <u>Builders Group LLC v. Qwest Commc'ns Corp.</u>, No. 07 Civ. 5463 (DAB), 2009 WL 3170101, at *6 (S.D.N.Y. Sept. 30, 2009).

[23]  <u>Kilgore</u>, 673 F.3d at 963 (citation omitted).

[24]  <u>See</u> <u>AT&T Mobility</u>, 131 S. Ct. at 1750 ("[T]he times in which consumer contracts were anything other than adhesive are long past.").  Because Plaintiffs provide no basis for invalidating the Arbitration Agreement, their argument fails.  <u>See</u> <u>Allan v. Snow Summit, Inc.</u>, 51 Cal. App. 4th  1358, 1375 (Cal. Ct. App. 1996); <u>Sablosky v. Gordon Co., Inc.</u>, 73 N.Y.2d 133, 139 (1989).

<u>Second</u>, Plaintiffs' argument that the Arbitration Agreement is "buried" at the end of the Client Manual is simply untrue.  (<u>Id.</u> at 17.)  Page 8 of the Client Manual (the first full page of text following the "Table of Contents" and "Definitions" sections) provides:

**Arbitration**

> This Agreement contains an arbitration provision that authorizes either party to elect mandatory and binding arbitration of certain disputes.  The terms of the arbitration provision are set forth in the section entitled "Resolution of Disputes by Arbitration."  *PLEASE READ THIS ARBITRATION PROVISION CAREFULLY.*

(Haslam Decl., Ex. 3 at 8.)  The Arbitration Agreement itself also is clear, conspicuous, and prominently displayed under a boldface heading "**Resolution of Disputes by Arbitration**."  (<u>Id.</u> at 44.)  Nothing about the location or text of the Arbitration Agreement is unconscionable.[25]

<u>Third</u>, Plaintiffs argue that a copy of the rules of AAA and JAMS was not provided. (Opp'n at 18-19.)  Plaintiffs do not cite a case invalidating a consumer arbitration agreement on this basis.[26]  The Arbitration Agreement also provides instructions for obtaining the rules as well as the telephone numbers and web addresses of AAA and JAMS.  (Haslam Decl., Ex. 3 at 45.) This is more than sufficient.[27]

**b.   The Arbitration Agreement Is Not Substantively Unconscionable**

Under New York law, substantive unconscionability "looks to the content of the contract," and "whether one or more key terms are unreasonably favorable to one party."[28]

---

[25]   <u>See</u> <u>Sanders v. Forex Capital Markets</u>, No. 11 Civ. 0864 CM, 2011 WL 5980202, at *5 (S.D.N.Y. Nov. 29, 2011); <u>see also</u> <u>Guerrero</u>, slip op. at 6-7; <u>Blau v. AT&T Mobility</u>, No. C 11-00541 CRB, 2012 WL 10546, at *5 (N.D. Cal. Jan. 3, 2012).

[26]   Plaintiffs do not cite a case applying New York law, and the two California cases they do cite involve employment agreements and are inapposite.  (Opp'n at 18-19.)

[27]   <u>See</u> <u>Ruhe v. Masimo Corp.</u>, No. SACV 11-00734-CJC (JCGx), 2011 WL 4442790, at *3 (C.D. Cal. Sept. 16, 2011) (upholding arbitration agreement that "clearly stated that arbitration would occur under the JAMS rules" and although not provided "[t]he JAMS rules are easy to locate in an online search.").

[28]   <u>Ragone</u>, 595 F.3d at 122 (citation omitted); <u>Sanders</u>, 2011 WL 5980202, at *6.

Similarly, California law "focuses on whether the terms of an agreement are so one-sided as to shock the conscience."[29]  Plaintiffs fail to prove substantive unconscionability.

Plaintiffs' primary argument is that the Arbitration Agreement makes it "costlier for individuals to vindicate their statutory rights."  (Opp'n at 21-23.)  This argument fails for multiple reasons.

First, Plaintiffs' argument is clearly preempted by the FAA.  As the Supreme Court held in AT&T Mobility, courts may not require class procedures to ensure that sufficient incentive exists to bring claims that otherwise might not be economically feasible.[30]  Plaintiffs argue that the arbitration agreement in AT&T Mobility "was not designed in a manner such that the claims would go unresolved."  (Opp'n at 22 n.8)  The Supreme Court's ruling, however, did not turn on the particular provisions of the clause.[31]  Plaintiffs also ignore the "Costs" section of the Arbitration Agreement, which provides that Citibank (i) will reimburse the initial filing fee if an arbitration award is rendered in the customer's favor; (ii) will pay the fees and costs for the first day of the hearing; and (iii) may advance or reimburse the filing and other fees under certain circumstances.  (Haslam Decl., Ex. 3 at 45.)  The arbitrator is also authorized to award expenses if allowed by applicable law.  (Id.)  This is important because under the consumer protection

---

[29]  Chavez v. Bank of Am., No. C 10-653 JCS, 2011 WL 4712204, at *11 (N.D. Cal. Oct. 7, 2011) (citation omitted).

[30]  See AT&T Mobility, 131 S. Ct. at 1753 (rejecting dissent's claim that "class proceedings are necessary to prosecute small-dollar claims" because "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons."); Coneff v. AT&T Corp., 673 F.3d 1155, 1159 (9th Cir. 2012) (AT&T Mobility forecloses argument that claims "cannot be vindicated effectively because they are worth much less than the cost of litigating them."); Kaltwasser v. AT&T Mobility LLC, 812 F. Supp. 2d 1042, 1047-50 (N.D. Cal. 2011) (claim that "the potential cost of proving a claim exceed potential individual damages" is preempted by the FAA under AT&T Mobility).

[31]  See Tractenberg v. Citigroup Inc., No. 2:10-cv-03092-LS, slip op. at 1 (E.D. Pa. Sept. 1, 2011) ("[P]laintiff references the differences in the arbitration agreements in Concepcion and in her credit card contract.  In Concepcion, the Supreme Court did not rely on the other terms of the arbitration provision for its determination [that] the FAA preempted California's rule regarding class arbitration."); Conroy v. Citibank, N.A., No. 10-CV-04930 SVW, slip op. at  4 (C.D. Cal. July 22, 2011) (no indication that "individualized assessment of the arbitration clause was necessary to [the Supreme Court's] holding" in AT&T Mobility).

laws of both New York and California, Plaintiffs would be eligible to recover reasonable attorneys' fees and costs, if successful.[32]  This allocation of fees clearly is reasonable.[33]

Second, contrary to Plaintiffs' argument, the "vindication of statutory rights" analysis expressed in In re Am. Express Merchants' Litig. ("Merchants"), 667 F.3d 204 (2d Cir. 2012), does not apply here.  Merchants addressed "the issue of vindicating federal statutory rights via arbitration" only.[34]  Plaintiffs do not assert any federal statutory claims and, additionally, the reasoning of Merchants was rejected by the Ninth Circuit in Coneff.[35]

Third, Plaintiffs fail to satisfy their heavy burden to show that individual "arbitration costs" will be prohibitively expensive.[36]  Plaintiffs do not contend – much less introduce any evidence – that arbitration-specific costs are so high as to foreclose access to the arbitral forum.  Nor can Plaintiffs make any such showing since, as Plaintiffs admit, their arbitration filing fees would only be $125 for a damages claim not exceeding $10,000.[37]  (Opp'n at 19.)  Plaintiffs do

---

[32]   N.Y. Gen. Bus. L. ("GBL") § 349(h); Cal. Civ. Code § 1780(e).  Importantly, GBL § 349 also permits an award of treble damages.  See Khanna v. Am. Express Co., No. 11 Civ. 6245 (JSR), 2011 WL 6382603, at *4 (S.D.N.Y. Dec. 14, 2011) (rejecting argument that plaintiffs could not vindicate statutory rights absent a class action where the statute "awards victorious parties mandatory treble damages and attorney's fees . . . precisely to encourage individual plaintiffs to bring such suits."); Lavoice v. UBS Fin. Services, Inc., No. 11 Civ. 2308 (BSJ) (JLC), 2012 WL 124590, at *7 (S.D.N.Y. Jan. 13, 2012) (rejecting "vindication of statutory rights" argument because, inter alia, the arbitration agreement authorized the arbitrator to "award whatever remedies would be available to the parties in a court of law.").

[33]   See Guerrero, slip op. at 8 (allocation of fees provisions in Citibank arbitration agreement "assure sufficient fairness to the customer and do not render the arbitration agreement exculpatory for Defendants or unconscionable."); Conroy, slip op. at 6-7 (same).

[34]   Id. at 214 (emphasis added); see also id. at 212 (framing the issue as "whether a class-action arbitration waiver clause is enforceable even if the plaintiffs are able to demonstrate that the practical effect of enforcement would be to preclude their ability to vindicate their federal statutory rights.") (emphasis added); see also Kaltwasser, 812 F. Supp. 2d at 1048 ("vindication of statutory rights" analysis only applies to federal statutory claims).

[35]   See Coneff, 673 F.3d at 1159 n.3.

[36]   Green Tree, 531 U.S. at 90; see Merchants, 667 F.3d at 217 (when "'a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'") (quoting Green Tree, 531 U.S. at 92; see also id. at 217 ("[T]he evidentiary record necessary to avoid a class-action arbitration waiver is not easily assembled.") (citations omitted) (emphasis added).

[37]   Plaintiffs paradoxically claim that Citibank has "led customers to believe that arbitration would be more expensive" than it actually is.  (Opp'n at 19.)

not explain why they cannot afford this fee, which notably is less than the $350 fee required to commence an action in this Court.

     Finally, Plaintiffs fail to show that substantial expert fees, which is the primary basis for their argument, are necessary for the proof of their individual claims.  In Merchants, a federal antitrust action involving complex "tying arrangement" claims, plaintiffs introduced evidence that "substantial expert witness costs" relating to an "antitrust study" ranging from $300,000 to more than $2,000,000 were "necessary to make an individual plaintiff's case."[38]  By contrast, Plaintiffs here allege that Citibank wrongfully issued IRS 1099 forms, and vaguely assert that expert testimony "potentially" may be needed with regard to "tax issues and valuation of airline miles."  (Opp'n at 22.)  Plaintiffs offer no evidence or legal authority supporting any alleged need for expert analysis or testimony to prove their claims.  Indeed, the propriety of Citibank's issuance of IRS 1099 forms and the income reported therein are legal issues under federal tax law that do not require expert testimony.[39]  Thus, even if Plaintiffs' "prohibitive costs" argument survives AT&T Mobility (which it does not), it is "too speculative to justify the invalidation of an arbitration agreement."[40]

     Plaintiffs other unconscionability arguments are equally meritless.  For instance, purporting to quote from the Client Manual, Plaintiffs assert that the Arbitration Agreement contains a "shortened statute of limitations."  (Opp'n at 19-20.)  Not true.  The Client Manual

---

[38]  See Merchants, 667 F.3d at 217-18.

[39]  See Stobie Creek Investments LLC v. U.S., 608 F.3d 1366, 1383 (Fed. Cir. 2010) (proper interpretation of federal tax laws and standards is not appropriate for expert testimony); Snap-Drape, Inc. v. Comm'r of Internal Revenue, 98 F.3d 194, 198 (5th Cir. 1996) (rejecting expert reports of accountants concerning the proper treatment of certain dividends for tax accounting purposes as "improperly contain[ing] legal conclusions and statements of mere advocacy.").   Plaintiffs' accountant's affidavit also concedes that he may only "potentially" serve as an expert, and merely assumes, without any support, that "Citibank's valuation methodology" is subject to expert analysis.

[40]  Green Tree, 531 U.S. at 91-92; see also Lavoice, 2012 WL 124590, at *8 (rejecting estimated expert costs as "insufficient to support a finding that the arbitration agreements are unenforceable" where plaintiff failed to show that expert testimony was needed or whether it would even be introduced).

provides: "Unless otherwise required by law, an action, proceeding or arbitration by you to enforce an obligation, duty or right arising under Agreement or by law with respect to your account or any account service must be commenced within one (1) year after the cause of action accrues . . . ." (Haslam Decl., Ex. 3 at 9 (emphasis added).)  The Arbitration Agreement does not diminish or limit Plaintiffs' rights or remedies in any way:  "The arbitrator shall decide the dispute in accordance with applicable substantive law consistent with the [FAA] and applicable statutes of limitations."  (Id. at 45 (emphasis added).)

Plaintiffs also complain that Hirsch would need "to travel to New York City for the hearing because his home address is in Long Island."  (Opp'n at 23.)  Since Hirsch initiated this action in New York City, this argument is not credible.  Furthermore, whether an arbitration hearing is conducted in Manhattan, Brooklyn or in Central Islip, Long Island (the sites of the district courts closest to Hirsch's home), travel to those areas is not "oppressive."[41]

## CONCLUSION

For all the foregoing reasons, Citibank respectfully requests that the Court grant this Motion in its entirety.

Dated:  New York, New York
             May 8, 2012

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

By: /s/Joseph E. Strauss
      Joseph E. Strauss (JES-1788)
      180 Maiden Lane
      New York, New York 10038
      212-806-5400
      *Attorneys for Defendant Citibank, N.A.*

---

[41]   See Captain Bounce, Inc. v. Business Fin. Servs., No. 11-CV-858 JLS (WMC), 2012 WL 928412, at *10 (S.D. Cal. Mar. 19, 2012) (forum selection clause in arbitration agreement requiring plaintiffs to travel from California to North Carolina was not "unduly oppressive.").  According to MapQuest, a drive from Great Neck to Manhattan, Brooklyn, or Central Islip takes approximately 35-45 minutes.  There is also regular train service from the Great Neck Station to all of these areas on the Long Island Railroad.

-10-