UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERTRAM HIRSCH and IGOR ROMANOV, on behalf of themselves and all others similarly situated, | Case No. 12 Civ. 1124 (DAB)(JLC) |
| Plaintiffs, | Class Action |
| vs. | |
| CITIBANK N.A., | |
| Defendant. | |

MEMORANDUM OF LAW IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

James C. Kelly (JK-9616)
The Law Office Of James C. Kelly
244 5th Avenue, Suit K-278
New York, New York 10001
Tel: 212-920-5042
Fax: 888-224-2078
Email: jkelly@jckellylaw.com

Samuel P. Sporn, Esq. (SPS-4444)
Schoengold & Sporn, P.C.
World Wide Plaza
393 West 49th Street
Suite 5HH
New York, NY 10019
Tel: 212-964-0046
Email: sporn@spornlaw.com

*Attorneys for plaintiffs and the proposed
class*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………...…………....……iii

I.      INTRODUCTION……………………………………………………….……1

II.     BACKGROUND……………………………………………………………….4

        A.      Procedural History and the Claims in the Case………………………….…….4

III.    THE PROPOSED SETTLEMENT AND NOTICE PROGRAM………………..…...6

        A.      Provisional Certification of Settlement Class…………………………...6

        B.      The Settlement………………………………………………………….…...6

                1.      Payments to Settlement Class Members……………………...…7
                2.      Costs of Notice and Other Administrative Costs…………………………8
                3.      Attorneys' Fees, Costs, and Expenses and Service Award for Plaintiffs…8
                4.      The Claims Process………………………………………………10
                5.      Mailing of Settlement Payments…………………………………....10

        C.      The Notice Program………………………………………………...11

                1.      Mailed Notice…………………………………………….……11
                2.      Settlement Website and Long-Form Notice…………………………11
                3.      Toll-Free Number………………………………………………...12

        D.      Opt-Out Procedure………………………………………………………12

        E.      Opportunity to Object…………………………………………….……12

        F.      Mutual Release………………………………………………………...12

IV.     STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT……………13

V.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE
        SETTLEMENT AGREEMENT……………………..………..…….…..........................14

                1.      The Litigation Is Complex And Will Be Expensive And Lengthy………………14
                2.      The Reaction Of The Class Will Likely Be Positive……………………………...15
                3.      The Current Stage Of The Instant Litigation And The Discovery That
                        Has Occurred Favors Preliminary Approval……………………………...15

4.    Plaintiffs Face Substantial Hurdles In Establishing Liability…………………….16
5.    Plaintiffs Face Substantial Hurdles In Proving Damages…………………….…17
6.    Maintaining The Class Action Through Trial May Be Challenging……………...17
7.    The Defendant May Not Be Able To Withstand A Substantially
Greater Judgment……………………………………………………………......17
8.    The Settlement Amounts Are Reasonable In Light Of The Best Possible
Recovery and The Settlement Amounts Are Reasonable In Light Of
All The Attendant Risks Of Litigation……………………………………...………18

VI.    THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS………………..19

A.    The Settlement Class Satisfies Rule 23(a)………………………………………20

1.    The Class Is So Numerous That Joinder Of All Members Is
Impracticable…………………………………………………………………20
2.    There Are Questions Of Law Or Fact Common To The Class…………..20
3.    The Plaintiffs' Claims Are Typical Of The Claims Of The Class………..21
4.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The
Class………………………………………………………………………...22
5.    Class Members Are Readily Identifiable And Ascertainable……………22

B.    The Settlement Class Satisfies Rule 23(b)(3)………………………………………23

1.    Common Questions Predominate Over Individual Issues………………23
2.    A Class Action Is The Superior Method For Adjudicating This
Controversy…………………………………………………………………24

VII.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL
AND PLAINTIFFS SHOULD BE APPOINTED AS CLASS
REPRESENTATIVES…………………………………………………………………...24

VIII.    THE PROPOSED CLASS NOTICE IS APPROPRIATE…………………….……25

IX.    THE COURT SHOULD SCHEDULE A FAIRNESS HEARING AND
CORRESPONDING DATES…………………………………………………………....27

X.    CONCLUSION………………………………………………………………………......28

## TABLE OF AUTHORITIES

**CASES**                                                                                                           **Page**

*In re "Agent Orange" Prod. Liab. Litig.,*
    611 F.Supp. 1396 (E.D.N.Y. 1985)……………………………………………...……19

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)…………………………………………………………...…..23

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)……………………………………...…15, 18

*Ayzelman v. Statewide Credit Services Corp.,*
    238 F.R.D. 358 (E.D.N.Y. 2006)……………………………………...……19

*Bildstein v. MasterCard Int'l Inc.,*
    329 F. Supp. 2d 410 (S.D.N.Y. 2004)……………………………...……21

*Brooklyn Ctr. for Independence of the Disabled v. Bloomberg,*
    No. 11-6690, 2012 WL 5438849 (S.D.N.Y. Nov. 7, 2012)………………...……22

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)………………………………………...………14

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995)………………………………….……………20

*D'Alauro v. GC Services Ltd. P'ship,*
    168 F.R.D. 451 (E.D.N.Y. 1996)…………………………………...……21

*Danieli v. IBM,*
    No. 08-3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009)……………….………13

*deMunecas v. Bold Food, LLC,*
    No. 09-00440, 2010 WL 2399345 (S.D.N.Y. Apr. 19, 2010)……………...………25

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006)……………………………………...………19

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
    No. 05- 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)………………...………14

*Guzman v. VLM, Inc.*,
    No. 07-1126, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008)……………………....……22, 23

*Jankowski v. Castaldi*,
    No. 01-0164, 2006 WL 118973 (E.D.N.Y. Jan. 13, 2006)………………………………24

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)…………………………………………………....………19

*In re Med. X-Ray*,
    No. 93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)…………………....………18

*In re Michael Milken and Associates Sec. Lit.*,
    150 F.R.D. 57 (S.D.N.Y. 1993)…………………………………………………….……18

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997)………………………………………………………16

*Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006)……………………………………....…………19, 26

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)…………………………………………....………21

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)…………………………………………....………24

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
    No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004)……………….......………18

*In re Traffic Executive Ass'n*,
    627 F.3d 631 (2d Cir. 1980)…………………………………………....………13

*Trief v. Dun & Bradstreet Corp.*,
    144 F.R.D. 193 (S.D.N.Y. 1992)…………………………………………....…20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)…………………………………………....…………23

*Wal-Mart Stores v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005)…………………………………………....………13

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)…………………………………………………….………14

**STATUTES**                                                                          **Page**

Fed. R. Civ. P. 23……………………………………………………...………..passim

**OTHER AUTHORITIES**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)……....13

Manual for Complex Litigation, Fourth, §21.632……………………………………...…13

I.      **INTRODUCTION**

Bertram Hirsch ("Hirsch") and Igor Romanov ("Romanov" and, collectively with Hirsch, "Plaintiffs") and defendant Citibank N.A. ("Citibank" or "Defendant") have reached a settlement fully resolving this matter (the "Settlement" and/or "Settlement Agreement"). By this motion, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and issue the other related relief requested herein.

Pursuant to the Settlement, Citibank has agreed to pay $1,750,000 to satisfy settlement awards to be paid to class members who submit valid and timely claims. There are approximately 7,200 members of the proposed settlement class ("Settlement Class" or "Settlement Class Members").  Settlement Class Members who submit valid claims will receive a settlement award of up to 70% of the amount of income attributable to the receipt of AA miles that Citibank reported on the Settlement Class Member's AA Miles Form 1099 multiplied by the Settlement Class Member's federal tax rate. For example, if a Settlement Class Member's federal tax rate was 35% and the amount of income attributable to receipt of AA Miles on his/her AA Miles Form 1099 was $1,000, his/her Settlement Award would be up to $245. The exact amount of a Settlement Class Member's settlement award will depend on whether the Settlement Class Member affirms that he/she reported and paid taxes on the income attributable to the receipt of AA Miles set forth in the AA Miles Form 1099, the Settlement Class Member's applicable federal tax rate, and the amount of claims submitted.

The Settlement also provides that Settlement Class Counsel and/or Plaintiffs may advise the Court that they believe they provided approximately $10,000,000 in value to the Settlement Class based upon changes made by Citibank to its customer deposit account agreement (the "Client Manual"), deposit account signature card and valuation of the AA miles in connection with deposit

1

account promotions. Citibank will not take a position on these representations. Specifically, Citibank changed the valuation of the AA miles issued in connection with its deposit account promotions to 1 cent per mile, thereby eliminating any requirement to issue Form 1099s in connection with its deposit account promotions in mostly all cases.

Further, after the first Second Circuit decision in this action, Citibank revised its Client Manual to state on the cover page that it was an agreement that contained important information between the customer and Citibank, including an agreement to arbitrate all disputes in private arbitration. After the second Second Circuit opinion in this action, Citibank revised its signature card to expressly state that the customer agreed to the Client Manual and arbitration of all disputes. Said changes have created a significant benefit to the Settlement Class and consumers nationwide in conducting their business with Citibank.[1]

To compensate for the benefits achieved and the time and expense expended by Plaintiffs' counsel, Citibank has agreed to pay Settlement Class Counsel's fees and expenses up to $1,200,000, subject to court approval, separate and apart from the $1,750,000 it has agreed to pay Settlement Class Members' claims. Citibank has also agreed to pay all costs associated with the administration of the Settlement separate and apart from the $1,750,000 it has agreed to pay Settlement Class Members' claims.

The Settlement further provides for direct notice by mail to the members of the Settlement Class, along with the establishment of a toll-free telephone number and a Settlement Website, where Settlement Class Members can obtain additional information, review the Settlement and

---

[1] A more detailed explanation of the changes that Citibank has made and the value created for the Settlement Class will be provided to the Court by Settlement Class Counsel when they file their Fee Application and application for service awards to Plaintiffs.

other key case documents, and submit claim forms electronically. The claim form and claim process are straightforward and user-friendly.

The Settlement follows significant litigation in this Court, including the production and review of thousands of documents, seven (7) depositions, a full bench trial, and two appeals before the Second Circuit Court of Appeals, and is the product of arms-length negotiations between the parties and their experienced counsel who were well-informed about the legal and factual issues involved, and was reached with the assistance of an experienced and well-respected mediator, Lawrence Pollack of JAMS. The Settlement falls well within the "range of reasonableness" applicable at the preliminary approval stage.

Plaintiffs and their undersigned counsel believe the Settlement to be in the best interests of the Settlement Class and wish to begin the court approval process that is required for all class action settlements. Plaintiffs therefore respectfully request that the Court review the parties' negotiated Settlement Agreement—which is attached as Exhibit A to the accompanying Joint Declaration of Samuel P. Sporn, Esq. and James C. Kelly, Esq. ("*Sporn-Kelly Decl.*") —and issue an Order:

1.      Preliminarily approving the parties' proposed Settlement;

2.      Certifying, for settlement purposes, the proposed Settlement Class;

3.      Appointing James C. Kelly and Samuel P. Sporn as Settlement Class Counsel and appointing Plaintiffs Bertram Hirsch and Igor Romanov as Class Representatives;

4.      Approving the parties' proposed forms of notice and notice program, and directing that notice be disseminated pursuant to such program;

5.      Approving the parties' proposed claim form and procedures for objections and exclusions from the Settlement Class;

3

6.      Appointing Rust Consulting, Inc., as Settlement Administrator;

7.      Pending the final determination of whether the Settlement should be approved, stay and enjoin Plaintiffs and each Settlement Class Member (other than opt-outs) from commencing, pursuing, maintaining, enforcing or prosecuting any Released Claims against any of the Released Parties; and

8.      Setting a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement.

## II.   BACKGROUND

### A.   Procedural History and the Claims in the Case

In February 2012, Plaintiffs Bertram Hirsch and Igor Romanov contacted Settlement Class Counsel to challenge Citibank's practice of offering airline miles to customers upon opening a savings and/or checking account and not disclosing to customers that said airline miles would be reported to the Internal Revenue Service ("IRS") as income, with a value of 2.5 cents per mile. After an extensive investigation by Settlement Class Counsel, the above-captioned class action lawsuit was filed against Citibank by Plaintiffs on behalf of themselves a proposed class of similar consumers. *Sporn-Kelly Decl.*, ¶¶ 4-5.

On March 16, 2012, Citibank filed a motion to compel Plaintiffs to arbitration, claiming that Plaintiffs agreed to mandatory arbitration through receipt of Citibank's customer agreements (i.e. the Client Manual) and by signing a signature card when they opened up their accounts. Plaintiffs opposed said motion on the ground that they did not receive the Client Manual and were not informed that they were agreeing to arbitration. *Id.*, ¶¶ 6-7.

Thereafter, the parties engaged in extensive litigation, including the production and review of documents, seven depositions, discovery disputes before Magistrate Judge James L. Cott, a

4

bench trial and multiple hearings before Judge Deborah A. Batts, including testimony from Plaintiff Bertram Hirsch and a Citibank branch manager and extensive briefing and production of trial exhibits, and two appeals in the Second Circuit, to determine if Plaintiffs were subject to arbitration.[2] *Id.*, ¶ 8.

After a bench trial, Judge Deborah A. Batts issued a comprehensive 65-page opinion finding that there was no operative arbitration agreement between the parties. Citibank appealed this finding and the Second Circuit agreed with Judge Batts and the parties proceeded to merits discovery. *Id.*, ¶ 9.

The parties engaged in extensive merits discovery. Citibank produced over 65,000 pages of documents. Plaintiffs also produced documents concerning the merits of the case. The parties scheduled a second round of depositions for Plaintiffs and a deposition of the Citibank executive with the most knowledge of the alleged wrongdoing. Plaintiffs also subpoenaed American Airlines for documents and negotiated with American Airlines for the deposition of a relevant American Airline employee based in Texas. *Id.*, ¶ 10.

After extensive review of the documents and having obtained a thorough understanding of the facts, including changes made by Citibank to the Client Manual and signature card, and changes made to the valuation of airline miles by Citibank, from 2.5 cents per mile to 1 cent per mile, the parties agreed to attempt to settle the litigation with mediation assistance. *Id.*, ¶ 11.

After an approximate 12-hour session with Lawrence Pollack, a highly experienced mediator at Jams, the parties signed a memorandum of understanding, agreeing to the principal

---

[2] A detailed summary of the litigation that has occurred thus far in the action will be provided to the Court by Plaintiffs and Settlement Class Counsel when they file their Fee Application and application for service awards to Plaintiffs.

terms of the Settlement. The parties spent several more months negotiating the details of the Settlement. *Id.*, ¶ 12.

III.     **THE PROPOSED SETTLEMENT AND NOTICE PROGRAM**

   A.     **Provisional Certification of Settlement Class**

Plaintiffs seek provisional certification of a Settlement Class, defined in the Settlement as: "all persons or entities in the United States who received an IRS Form 1099 from Citibank as a result of opening a Citibank deposit account and receiving AA miles through Citibank promotions in which Citibank valued the AA miles at 2.5 cents per mile, during the period between January 1, 2009 and the date of entry of the Preliminary Approval Order." Citibank does not oppose certification of the Settlement Class for settlement purposes only. (Settlement, §§ 2.23, 5.1).[3]

   B.     **The Settlement**

Under the Settlement, Citibank has agreed to pay up to $1,750,000 to satisfy settlement awards. Settlement Class Members who submit valid claims will receive a settlement award of up to 70% of the amount of income attributable to the receipt of AA miles that Citibank reported on the Settlement Class Member's AA Miles Form 1099 multiplied by the Settlement Class Member's federal tax rate. For example, if a Settlement Class Member's federal tax rate was 35% and the amount of income attributable to receipt of AA Miles on his/her AA Miles Form 1099 was $1,000, his/her Settlement Award would be up to $245. The exact amount of a Settlement Class Member's settlement award will depend on whether the Settlement Class Member affirms that he/she reported and paid taxes on the income attributable to the receipt of AA Miles set forth in the AA Miles

_____

[3] It is estimated, based on Citibank's reasonably available records, that the Settlement Class includes approximately 7,200 persons. *Sporn-Kelly Decl.*, ¶ 15.

Form 1099, the Settlement Class Member's applicable federal tax rate, and the amount of claims submitted. (Settlement, §§ 3.1, 3.2)

If the Settlement is approved and becomes final, the Settlement Fund will be distributed as follows:

1.     **Payments to Settlement Class Members**

Settlement Awards shall be paid on a claims-made basis to Settlement Class Members who submit a Valid Claim. Each Settlement Class Member who submits a Valid Claim will receive a Settlement Award as follows:

(a)     If a Settlement Class Member submits a Valid Claim affirming: (i) the Settlement Class Member reported to the IRS the income attributable to the receipt of AA miles set forth in his or her AA Miles Form 1099, (ii) the Settlement Class Member paid taxes on the income attributable to the receipt of AA miles set forth in his or her AA Miles Form 1099, and (iii) the Settlement Class Member's federal tax rate at the time he or she paid taxes on the income attributable to the receipt of AA miles set forth in his or her AA Miles Form 1099, then that Settlement Class Member will receive a Settlement Award calculated as follows: seventy percent (70%) of the amount of the income attributable to the receipt of AA miles reported on the Settlement Class Member's AA Miles Form 1099 multiplied by the Settlement Class Member's federal tax rate (e.g., if a Settlement Class Member's federal tax rate was 35% and the amount of income attributable to receipt of AA Miles on his or her AA Miles Form 1099 was $1,000, his or her Settlement Award would be $245).

To determine a Settlement Class Member's applicable federal tax rate, the Claim Forms will allow the Settlement Class Member to select one of the following options: 10%, 15%, 25%, 28%, 33%, 35%, and "unknown." In the event that a Settlement Class Member fails to select a

federal tax rate or selects "unknown," then that Settlement Class Member's federal tax rate will be calculated at twelve and one-half percent (12.5%).

> (b)     If a Settlement Class Member submits a Valid Claim that does not contain the affirmations set forth above, that Settlement Class Member will receive a Settlement Award of $40.

> (c)     If the aggregate amount of the Settlement Awards exceeds $1,750,000, then each Settlement Award will be reduced on a <u>pro rata</u> basis such that the aggregate amount of the Settlement Awards does not exceed $1,750,000 (<u>e.g.</u>, if a Settlement Class Member's Settlement Award is determined to be $250 and the total amount of Settlement Awards is $2,000,000, which is 12.5% greater than the Maximum Settlement Liability of $1,750,000, then he or she will receive a Settlement Award of $218.75, which is 12.5% less than $250).

 (Settlement, §§ 3.2)

## 2.     Costs of Notice and Other Administrative Costs

The costs of disseminating notice to the Settlement Class, distributing settlement payments to Settlement Class Members, and the other costs of the Settlement Administrator will be paid by Citibank, and said costs will not come out of the $1,750,000 designated by Citibank for Settlement Awards. (Settlement, §§ 2.26, 3.1, 7.2)

## 3.     Attorneys' Fees, Costs, and Expenses and Service Award for Plaintiffs

Settlement Class Counsel will separately apply for payment from Citibank to compensate them for their work on behalf of the Settlement Class and for their litigation expenses incurred in this litigation. Settlement Class Counsel's application will be limited to seeking an award of attorneys' fees, costs, and expenses, in an amount not to exceed $1,200,000. (Settlement, § 4.1) Citibank's payment of Settlement Class Counsel attorneys' fees, costs, and expenses will not come

out of the $1,750,000 designated by Citibank for Settlement Awards. (Settlement, §§ 2.26, 3.1, 7.2)

Settlement Class Counsel will also petition the Court for a service award not to exceed $25,000 for Plaintiff Bertram Hirsch and a service award not to exceed $12,500 for Plaintiff Igor Romanov, to compensate them for their time, commitment, and benefits obtained on behalf of the Settlement Class in this litigation. (Settlement, § 4.2) Plaintiffs have expended a significant amount of time and energy in this litigation, including responding to multiple document requests and interrogatories, attending their own depositions and consulting with Plaintiffs' counsel on all important issues in this litigation.  Mr. Hirsch also provided significantly more work in that he, *inter alia*, attended multiple depositions of Citibank personal, providing testimony at a bench trial, attended Court hearings and a Second Circuit hearing, and contributed his legal expertise as a lawyer in helping develop the legal claims and arguments throughout the litigation.  Plaintiffs' motion for a service award will provide additional detail on their time committed to this litigation. *Sporn-Kelly Decl.*, ¶ 21.

The Settlement also provides that Settlement Class Counsel and/or Plaintiffs may advise the Court that they believe they provided approximately $10,000,000 in value to the Settlement Class based upon changes made by Citibank to the Client Manual, deposit account signature card and valuation of the AA miles in connection with deposit account promotions. Citibank will not take a position on these representations. (Settlement, § 4.3) Specifically, beginning in tax year 2012, shortly after the filing of this action, Citibank changed the valuation of the AA miles issued in connection with its deposit account promotions to 1 cent per mile, thereby eliminating any requirement to issue Form 1099s in connection with its deposit account promotions in mostly all cases, and thereby avoiding millions of dollars in tax savings for the Settlement Class for tax years

2012 to the present. Further, after the first Second Circuit decision in this Action, Citibank revised its Client Manual to state on the cover page that it was an agreement that contained important information between the customer and Citibank, including an agreement to arbitrate all disputes in private arbitration. After the second Second Circuit opinion in this Action, Citibank revised its signature card to expressly state that the customer agreed to the Client Manual and arbitration of all disputes. Said changes have created a significant benefit to the Settlement Class and consumers nationwide in conducting transactions with Citibank.[4] *Sporn-Kelly Decl.*, ¶¶ 18-19.

### 4. <u>The Claims Process</u>

All Settlement Class Members may submit a claim for a settlement payment. The claim form will be substantially in the form attached as Exhibit 3 to the Settlement. The deadline for submitting claims will be ninety (90) days after notice is provided to Settlement Class Members, and will be clearly indicated in the notices. The Notice Deadline is forty-five (45) days following the entry of the Preliminary Approval Order. (Settlement, §§ 2.13, 2.2, 3.2)

Claim forms may be submitted electronically via the Settlement Website or by mail. A printable claim form will be available on the Settlement Website, and Settlement Class Members may request a hard copy claim form by contacting the Settlement Administrator. (Settlement, § 8.2(b))

### 5. <u>Mailing of Settlement Payments</u>

If the Settlement is approved and becomes final, within seventy-five days (75) following the Effective Date, the Settlement Administrator will mail settlement payments to all Settlement Class Members who submitted Valid Claims. Settlement payments will be in the form of checks,

---

[4] Further detail concerning the work that Plaintiffs and Settlement Counsel performed, including the benefits achieved will be provided in Plaintiffs' and Settlement Class Counsel's fee, award, and expense application to the Court.

and will be valid for 180 days. The Settlement Administrator will make reasonable efforts to locate Settlement Class Members whose checks are returned in order to effectuate delivery of such checks. (Settlement, § 3.6)

### C.     The Notice Program

The Settlement includes detailed proposed forms of notice and a notice program that is well-designed to ensure the best notice practicable under the circumstances of the pendency of this litigation, the key terms of the Settlement, the claims deadline, Settlement Class Counsel's fee, cost, and expense application, and class members' opt-out and objection rights. The notice program will be administered by the Settlement Administrator (Settlement, § 8.1)

### 1.     Mailed Notice

Summary notice, substantially in the form attached as Exhibit 1 to the Settlement, will be mailed to Settlement Class Members. To that end, Citibank will provide the Settlement Administrator with a Class List that identifies the names and last known addresses of the persons in the Settlement Class as reflected in Citibank's reasonably available computerized records. The Settlement Administrator will update all mailing addresses through the National Change of Address database, and mail the summary notice to each person on the Class List.

To the extent summary notices are returned with forwarding address information, the Settlement Administrator will re-mail the summary notice to the new address indicated and update the Class List accordingly. (Settlement, §§ 8.1, 8.2(a))

### 2.     Settlement Website and Long-Form Notice

On or before the date mailed notice commences, the Settlement Administrator will establish a Settlement Website, where Settlement Class Members may submit claims electronically, obtain additional information about the Settlement, and access copies of the Long-

Form Notice (substantially in the form attached as Exhibit 2 to the Settlement); the Settlement; a printable claim form; the Complaint; and the Court's Preliminary Approval Order; and other case documents. The web address for the Settlement Website will be included in the notices. (Settlement, §§ 8.2(b))

### 3.  **Toll-Free Number**

The Settlement Administrator will also establish and maintain a toll-free number where Settlement Class Members can obtain additional information and request a hard-copy claim form. The toll-free number will be included in the notices.  (Settlement, § 8.2(a)-(c))

### D.  **Opt-Out Procedure**

Any person within the Settlement Class definition may request to be excluded from the Settlement Class by sending a signed, written request to the Settlement Administrator by the deadline proscribed by the notice. (Settlement, § 9.1)

### E.  **Opportunity to Object**

Settlement Class Members who do not timely and validly request exclusion may object to the Settlement, Settlement Class Counsel's fee and expense application, and/or the request for a service award for Plaintiffs. To be considered, an objection must be sent to the counsel for both parties and to the Clerk of the Court, at the addresses indicated in the Long-Form Notice, must be postmarked by the deadline proscribed by the notice, and must include the information proscribed by the notice. (Settlement, §§ 10.1-10.4)

### F.  **Mutual Release**

In exchange for the benefits provided by Citibank under the Settlement, Settlement Class Members will release Citibank and related entities from any claims they may have related to the issues in this case. (Settlement, §§ 12.1-12.2)

IV.     **STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT**

Rule 23(e) governs the settlement of class actions. The Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Compromise and settlement of class actions is favored. *See Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context") (quotation omitted); *see also* Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Thus, at the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement. *See* Newberg § 11.25; Manual for Complex Litigation § 21.632. The Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.3d 631, 634 (2d Cir. 1980); Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and [it] appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).[5]

Moreover, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after

---

[5] *See also Danieli v. IBM*, No. 08-3688, 2009 WL 6583144, at *4–5 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where settlement "has no obvious defects" and proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted.").

meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)) (internal quotations marks omitted). Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05- 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate. There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (citation omitted).

## V.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENT AGREEMENT

When evaluating the fairness and adequacy of a proposed class settlement, courts in this Circuit are guided by the factors enunciated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (abrogated on other grounds). Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. These factors heavily favor granting preliminary approval.

### 1.     The Litigation Is Complex And Will Be Expensive And Lengthy

The Settlement Agreement provides substantial monetary benefits to the Settlement Class while avoiding the significant expense and delay attendant to discovery and motion practice related

14

to summary judgment and class certification. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). The Settlement Class includes approximately 7,200 consumers located in various states throughout the country. Having to engage in motion practice with respect to the consumer protection laws of the various states would be extremely time consuming and expensive. *Sporn-Kelly Decl.*, ¶ 24.

Moreover, continued merits litigation would necessitate numerous additional depositions, including that of the Plaintiffs, Defendant's personnel, American Airlines personal, and expert witnesses for both named Plaintiffs and Defendant. Further, absent an approved settlement, the parties in the action will be forced to continue litigation, which will burden the Court. The resulting fact-intensive trial will also result in significant expenses to all parties. Any judgment will likely be appealed, extending the costs and duration of the litigation. *Id.*, ¶ 25.

The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Settlement Class. *Id.*, ¶ 26. Thus, this factor weighs in favor of settlement.

### 2.       The Reaction Of The Class Will Likely Be Positive

While the reaction of absent class members cannot be conclusively gauged until notice has been sent, the fact that class members can receive up to 70% of the federal tax paid as a result of the Form 1099s at issue, amounting up to a $245 check, is substantial. Further, the fact that Plaintiffs and their experienced counsel support the Settlement Agreement is a strong indication that members of the Settlement Class will also view it positively.

### 3.       The Current Stage Of The Instant Litigation And The Discovery That Has Occurred Favors Preliminary Approval

The action was filed nearly five years ago, and this case has been litigated for approximately four years. The legal issues have been thoroughly vetted. Moreover, Plaintiffs'

counsel and Defendant have engaged in substantial merits discovery prior to settlement negotiations, including the detailed production and review of tens of thousands of pages of relevant documents. In the mediation, as well, the parties submitted briefs providing the mediator with detailed analysis of the parties' claims and defenses, including damage analysis. Plaintiff Bertram Hirsch and Plaintiffs' counsel also conducted a thorough investigation of Plaintiffs' claims and conducted extensive research regarding tax law and IRS regulations concerning the issuance of bonus and rebate awards issued in connection with the purchase of products or services. *Sporn-Kelly Decl.*, ¶ 27.

### 4.       Plaintiffs Face Substantial Hurdles In Establishing Liability

The Settlement Agreement should be preliminarily approved because Plaintiffs face substantial hurdles in establishing liability. Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

First, Plaintiffs will need to obtain class certification. Defendant will likely argue that the class cannot be certified because each class member's claims are subject to arbitration and a class action waiver, requiring further litigation concerning Citibank's Client Manual. Defendant is likely to further argue that a nationwide class is not appropriate because the differences between state consumer laws would overwhelm common issues, potentially limited the class.  Defendant will also likely argue that damages are not provable on a class wide basis and that as a result there will be too many individual issues as to each class member's damage such that class certification is not appropriate, potentially limited the certification of the class for liability purposes only. *Sporn-Kelly Decl.*, ¶ 28.

Defendant will also likely move for summary judgment, as will Plaintiffs, with no guarantee of success.  Further, if the summary judgment stage is not successful, Plaintiffs will be

required to proceed through a costly and time consuming trial with no success guaranteed. *Id*, ¶ 29.

Plaintiffs' are confident in their ability to prove their claims. Nonetheless, the Settlement Agreement avoids the risks inherent in further litigation, and therefore this factor weighs in favor of preliminary approval.

### 5.   Plaintiffs Face Substantial Hurdles In Proving Damages

Defendant will likely argue Plaintiffs will not be able to show damages on a class wide because Plaintiffs cannot show how much tax each class member paid as a result of the Form 1099. Class members likely have different tax brackets and some did not report the Form 1099 to the IRS at all. While Plaintiffs believe that they would prevail over this argument, including any other arguments raised, there are substantial obstacles Plaintiffs must overcome to prove damages in this case, a factor favoring approval of the Settlement Agreement. *Id.*, ¶ 30.

### 6.   Maintaining The Class Action Through Trial May Be Challenging

Plaintiffs are confident in their ability to maintain this action as a class through trial. Nonetheless, they recognize that there are substantial hurdles in being able to do so. Defendant most certainly will raise what it claims are individual reliance, causation and damages issues. And class certification is never a given in any case. A class determination outside of settlement proceedings will require extensive and expensive briefing by both parties, the outcome of which is by no means assured. This factor therefore favors preliminary approval. *Id.*, ¶ 31.

### 7.   The Defendant May Not Be Able To Withstand A Substantially Greater Judgment

While Plaintiffs have no concern that Citibank has the ability to pay all claims made in the context of this Settlement Agreement, there is no certainty. In any event, a "defendant['s] ability

to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178 n.9.

### 8.   The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery and The Settlement Amounts Are Reasonable In Light Of All The Attendant Risks Of Litigation

The adequacy of a settlement amount offered should be judged "in light of the strengths and weaknesses of the plaintiff[s'] case." *In re Med. X-Ray*, No. 93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998). That the settlement amount is less than the maximum potential recovery is not a barrier to approval. *See Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Indeed, judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

Here, there are a broad range of potential recoveries if the case were to be litigated to judgment by trial. On the one hand, Plaintiffs could prevail on their claims and recover the highest estimated amount of damage, which is 100% of the federal taxes paid and any state taxes paid. On the other hand, Defendants could prevail on their legal arguments to defeat liability entirely or defeat class certification, resulting in no recovery for Class members. Given this broad range, the Settlement Agreement provides a substantial recovery, including sizable refunds to consumers without production of their tax returns, and effective notice to the Class that falls well within the range that courts have traditionally found to be fair and adequate under the law. *Sporn-Kelly Decl.*, ¶ 32. Moreover, the fact that the Settlement provides for a prompt payment to claimants favors approval of the settlement. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for

18

payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road. Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)).

Therefore, these factors militate in favor of approving the Settlement Agreement.

## VI.   THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS

"Under Federal Rule 23(c)(1), 'the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date.'" *Ayzelman v. Statewide Credit Services Corp.,* 238 F.R.D. 358, 362 (E.D.N.Y. 2006) (citation and quotation marks omitted). "Certification of a class for settlement purposes only is permissible and appropriate." *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.,* 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citation omitted). Where a class is proposed in connection with a motion for preliminary approval, "a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). Courts employ a "'liberal rather than restrictive construction' of Rule 23, 'adopt[ing] a standard of flexibility' in deciding . . .certification." *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997).

Plaintiffs seek the conditional certification of the following Rule 23 class for purposes of effectuating the settlement:

> All persons or entities in the United States who received an IRS Form 1099 from Citibank as a result of opening a Citibank deposit account and receiving AA miles through Citibank promotions in which Citibank valued the AA miles at 2.5 cents per mile, during the period between January 1, 2009 and the date of entry of the Preliminary Approval Order.

Because all of the certification requirements for settlement purposes are met and Defendant consents to conditional certification of a class action for settlement purposes, Plaintiffs respectfully request that the Court conditionally certify the Settlement Class.

**A**.      **The Settlement Class Satisfies Rule 23(a)**

There are five Rule 23(a) requirements (numerosity, commonality, typicality, adequacy and ascertainability), all of which the Settlement Class satisfies.

> **1.      The Class Is So Numerous That Joinder Of All Members Is Impracticable**

Joinder of the thousands of Class members that received Form 1099s is impracticable, and therefore the numerosity requirement is met here. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.") (citation omitted).

> **2.      There Are Questions Of Law Or Fact Common To The Class**

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class" for a suit to be certified as a class action. Fed. R. Civ. P. 23(a)(2). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members. Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citations omitted).

Here, there are many common issues of fact and law, including whether Defendant's representations regarding their promotional offers are false and misleading, whether consumers have been misled and deceived by Defendant's actions, whether Defendant's conduct constitutes violations of various states' consumer protection laws, whether Plaintiffs and other Class members

20

have been injured and the proper measure of their losses as a result of those injuries, and whether

Plaintiffs and Class members are entitled to injunctive, declaratory or other equitable relief.

### 3.    The Plaintiffs' Claims Are Typical Of The Claims Of The Class

Rule 23(a)(3) provides that the claims of the Plaintiffs must be "typical of the claims of . .

.the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) is satisfied "when each class member's claim

arises from the same course of events and each class member makes similar legal arguments to

prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citation

omitted). "When the same 'unlawful conduct was directed at both the named plaintiff and the class

to be represented, the typicality requirement is usually met irrespective of varying fact patterns

which underlie individual claims.'" *D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 456-57

(E.D.N.Y. 1996) (citations omitted).

Here, the claims of the Plaintiffs and those of the members of the Settlement Class arise

from the same conduct. Defendant has offered promotional airline miles as a result of purchasing

its service and failed to disclose that customers would have to pay taxes on the receipt of the airline

miles at a value of 2.5 cents per mile. Plaintiffs allege that these are material misrepresentations

that caused them injury because they would not have purchased the services had they known that

they would have to pay taxes on the receipt of airline miles. Plaintiffs allege that they were

damaged in the amount of the tax liability created as a result of the issuance of the Form 1099.

This same conduct caused the same injury to members of the Settlement Class. Moreover,

Defendant's alleged misrepresentations regarding their promotional airline mile offers would be

material to any reasonable consumer. *See Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410,

414 (S.D.N.Y. 2004) ("[A] material claim is one that involves information that is important to

consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (citation omitted).

### 4.     Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy, the Court must inquire as to whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*, No. 11-6690, 2012 WL 5438849, at *8 (S.D.N.Y. Nov. 7, 2012) (quotation omitted). Here, there is no indication that Plaintiffs have any interests antagonistic to the Settlement Class.

To the contrary, Plaintiffs have actively protected the interests of the Class. They engaged in the prosecution of this matter since its inception, have consistently conferred with their counsel, reviewed the complaint, responded to document requests and interrogatories, appeared for a deposition, scheduled another deposition, appeared for testimony in a bench trial, attended hearings, and continuously consulted with counsel throughout a four-year litigation, including working on the settlement. Moreover, Plaintiffs' attorneys are qualified, experienced and able to conduct the litigation. *Sporn-Kelly Decl.*, ¶¶ 33-34.

### 5.     Class Members Are Readily Identifiable And Ascertainable

Rule 23 also contains an "implicit requirement" that the class be precise and ascertainable. *Guzman v. VLM, Inc.*, No. 07-1126, 2008 WL 597186, at *4 (E.D.N.Y. Mar. 2, 2008). Here, the Class is readily identifiable because it consists of all persons or entities in the United States who received an IRS Form 1099 from Citibank as a result of opening a Citibank deposit account and receiving AA miles through Citibank promotions in which Citibank valued the AA miles at 2.5

cents per mile, during the period between January 1, 2009 and the date of entry of the Preliminary Approval Order. All Class members are able to determine their membership in the Class. The Settlement Class is thus precise and readily identifiable.

**B.   The Settlement Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) provides that questions of law or fact common to class members must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In addition, Plaintiffs must demonstrate that "[a] class action is superior to other methods for fairly and efficiently adjudicating the controversy." *Id.*

**1.   Common Questions Predominate Over Individual Issues**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance thus requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds). Here, Defendant's liability turns on whether its action in failing to disclose the tax consequences of its promotion airline mile offers are deceptive and misleading, and every Settlement Class Member's claim may be proven by the same set of facts. Even if the measure of damages differs amongst Settlement Class members, when common questions of law or fact predominate regarding liability, "the existence of individual questions as to damages is generally unimportant." *Guzman v. VLM, Inc.*, No. 07-1126, 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008). In addition, the Settlement Class satisfies Rule 23(a)'s requirements, which "goes a long way toward satisfying the Rule 23(b)(3) requirement of

commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (citation omitted).

>   2.      **A Class Action Is The Superior Method For Adjudicating This Controversy**

Rule 23(b)(3) also requires a determination as to whether a class action is the superior means to adjudicate the class' claims. The rule sets forth a list of relevant factors: class members' interest in bringing individual actions; the extent of existing litigation by class members; the desirability of concentrating the litigation in one forum; and potential issues with managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D). It is well settled that a class action is the superior method of adjudication where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue. . . [and] there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims." *Jankowski v. Castaldi*, No. 01-0164, 2006 WL 118973, at \*4 (E.D.N.Y. Jan. 13, 2006). Certification of the Settlement Class will allow for efficient adjudication of claims that would likely not be brought owing to prohibitive legal expenses, while at the same time preserving scarce judicial resources.  Therefore, a class action is a superior method of adjudicating this case.

## VII.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL AND PLAINTIFFS SHOULD BE APPOINTED AS CLASS REPRESENTATIVES

Plaintiffs request that James C. Kelly of the Law Office of James C. Kelly, and Samuel P. Sporn, of Schoengold and Sporn P.C., be appointed as Class Counsel. Rule 23(g) enumerates four factors for evaluating the adequacy of proposed counsel:

>   (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action; (3) counsel's knowledge of

the applicable law; and (4) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i). *See also deMunecas v. Bold Food, LLC*, No. 09-00440, 2010 WL 2399345, at *3 (S.D.N.Y. Apr. 19, 2010) ("The work that [plaintiffs' counsel] has performed both in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests."). All of these factors militate in favor of appointing these lawyers as Class Counsel. Proposed Class Counsel spent a significant amount of time identifying and investigating Plaintiffs' claims before filing the instant actions. Proposed Class Counsel also has extensive experience in class actions, particularly those involving alleged consumer frauds. Finally, proposed Class Counsel have more than sufficient resources to represent the Class. *Id*. *Sporn-Kelly Decl.*, ¶ 34.

Plaintiffs Bertram Hirsch and Igor Romanov should be appointed class representatives of the Settlement Class. Plaintiffs have actively protected the interests of the Class. They engaged in the prosecution of this matter since its inception, have consistently conferred with their counsel, reviewed the complaint, responded to document requests and interrogatories, appeared for a deposition, scheduled another deposition, appeared for testimony in a bench trial, attended hearings, and continuously consulted with counsel throughout a four-year litigation, including working on the settlement. *Id.*, ¶ 33.

## VIII.   THE PROPOSED CLASS NOTICE IS APPROPRIATE

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class; the class claims, issues, or defenses; that a class member may enter an appearance

25

through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(b)(2)(B).

Here, Defendant has agreed to provide direct notice to the members of the Settlement Class as Defendant has each of the Settlement Class member's last known address. The form of Notices attached as Exhibits 1 and 2 to the Settlement provide all of the information required under Rule 23(b)(2)(B), and they "fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). The Notice also directs class members to an Internet website where they can find further information, including the date of the fairness hearing, procedures for submitting a claim form, and procedures for opting out or objecting to the settlement. Therefore, Plaintiffs respectfully request that the Court approve the forms of Notice attached as Exhibits 1 and 2 to the Settlement. Rust Consulting, Inc., which will administer the Class Notice, will publish the Publication Notice according to the following plan: (1) Obtain from Citibank the name and mailing address information (at the most recent address reasonably available in Citibank's records) for persons in the Settlement Class, and update the addresses received through the National Change of Address database for the purpose of mailing the Postcard Notice, and later mailing Settlement Awards; (2) Provide the Postcard Notice, as described herein and approved by the Court; (3) Establish and maintain a Post Office box for requests for exclusion from the Settlement Class; (4) Establish and maintain the Settlement Website; and (5) Establish and maintain an automated toll-free telephone line for persons in the Settlement Class to call with Settlement-related inquiries. The notice plan is calibrated to provide

26

effective direct and broad notice to the members of the Settlement Class.  (Settlement, §§ 7.1(b)(1)-(5).

## IX.   THE COURT SHOULD SCHEDULE A FAIRNESS HEARING AND <u>CORRESPONDING DATES</u>

The next steps in the settlement approval process are to notify the Settlement Class of the proposed Settlement, allow Settlement Class Members an opportunity to exclude themselves or file objections, and hold a Final Approval Hearing. Towards those ends, the parties propose the following schedule:

| | |
|---|---|
| Last day for Citibank to deliver the Class List to the Settlement Administrator. | **15 business days after entry of the Preliminary Approval Order** |
| Notice Deadline. | **45 days after entry of the Preliminary Approval Order** |
| Last day for Settlement Class Counsel to file their Fee Application and application for service awards to Plaintiffs. | **30 days after the Notice Deadline** |
| Opt-Out and Objection Deadline. | **45 days after the Notice Deadline** |
| Claim Deadline. | **90 days after the Notice Deadline** |
| Last day for Plaintiffs to file motion in support of final approval of the Settlement. | **45 days prior to the Final Approval Hearing** |
| Last day for Objectors to file Notice of Intention to Appear | **30 days prior to Final Approval Hearing** |
| Last day for Citibank to file objection to application for service awards to Plaintiffs. | **14 days prior to Final Approval Hearing** |

| | |
|---|---|
| Last day for the Parties to file: (a) any responses to any Settlement Class Member objections; and (b) any reply papers in support of final approval of the Settlement or Settlement Class Counsel's Fee Application and application for service awards to Plaintiffs. | **14 days prior to Final Approval Hearing** |
| Last day for Settlement Class Counsel to file reply in support of application for service awards to Plaintiffs. | **7 days prior to Final Approval Hearing** |
| Last day for Objectors to file reply in support of objections to Settlement. | **7 days prior to Final Approval Hearing** |
| Final Approval Hearing | **_____ ___, 2016 at _:_ _.m.**<br><br>**(A date no earlier than 60 days after Claim Deadline)** |

## X.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

1.      Preliminarily approving the parties' proposed Settlement;

2.      Certifying, for settlement purposes, the proposed Settlement Class;

3.      Appointing James C. Kelly and Samuel P. Sporn as Settlement Class Counsel and appointing Plaintiffs Bertram Hirsch and Igor Romanov as Class Representative;

4.      Approving the parties' proposed forms of notice and notice program, and directing that notice be disseminated pursuant to such program;

5.      Approving the parties' proposed claim form and procedures for objections and exclusions from the Settlement Class;

6.      Appointing Rust Consulting, Inc. as Settlement Administrator;

7.      Staying this action pending final approval of the settlement; and

8.      Setting a Final Approval Hearing and other dates, as proposed herein, in connection

with the final approval of the Settlement.

Dated: September 8, 2016
         New York, New York

                                        Respectfully submitted,

                                        _____
                                        James C. Kelly (JK-9616)
                                        **The Law Office Of James C. Kelly**
                                        244 5th Avenue, Suit K-278
                                        New York, New York 10001
                                        Tel: 212-920-5042
                                        Fax: 208-575-8174
                                        Email: jkelly@jckellylaw.com

                                        Samuel P. Sporn, Esq. (SPS-4444)
                                        **Schoengold & Sporn, P.C.**
                                        World Wide Plaza
                                        393 West 49th Street
                                        Suite 5HH
                                        New York, NY 10019
                                        Tel: 212-964-0046
                                        Email: sporn@spornlaw.com

                                        *Attorneys for plaintiffs and the proposed class*