UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
BERTRAM HIRSCH and IGOR ROMANOV, on
behalf of themselves and all others
similarly situated,

              Plaintiffs,

                                  12 Civ. 1124 (DAB)
    -v.-                           MEMORANDUM & ORDER

CITIBANK, N.A.,

              Defendant.
--------------------------------------X

DEBORAH A. BATTS, United States District Judge.

I. <u>INTRODUCTION AND SUMMARY</u>

    On January 31, 2018, the Court held a Fairness Hearing to consider final certification of the Settlement Class and the substantive and procedural fairness of the terms of the Parties' Settlement, based on Plaintiffs' Motion for Final Approval of Class Action Settlement and Class Counsels' Motion for Approval of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Class Representatives. (Dkts. 70; 76). At the hearing, the Court indicated that it would file this Memorandum and Order setting out the Court's rationale for final certification of the Settlement Class and approval of the Settlement.

A. <u>Background</u>

This Action arises from a February 2012 class action lawsuit against Defendant Citibank, N.A. The Plaintiffs, Bertram Hirsch and Igor Romanov, on behalf of themselves and all others similarly situated, challenge Citibank's practice of offering airline miles to customers who opened a savings or checking account. Plaintiffs allege that Citibank engaged in unfair and deceptive trade practices by failing to disclose to its customers that such miles would be reported to the IRS as taxable, miscellaneous income worth 2.5 cents per mile, whether or not the miles were redeemed. (Compl. ¶ 4; ¶ 34). The Plaintiffs claim violations of all fifty States' consumer protection laws, breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and unjust enrichment. (<u>Id.</u> at 14-21).

On March 16, 2012, Citibank filed a Motion to Compel Arbitration, claiming that Plaintiffs agreed to mandatory arbitration through receipt of Citibank's customer agreement (i.e., the Client Manual) and by signing a signature card when opening an account. (Dkt. 6). This Court first denied Defendant's Motion to Compel on March 28, 2013. (Dkt. 21). Several interlocutory appeals ensued, as well as an evidentiary hearing on factual disputes regarding Citibank's customer agreement. On June 10, 2014, this Court denied Defendant's

renewed Motion to Compel, and the Second Circuit affirmed on
June 11, 2015. (Dkt. 53).

   B. <u>Settlement</u>

     Following discovery, in November 2015, the Parties entered
into mediation, and reached a settlement in principle. (Pls.'
Memo of Law in support of Final Approval of Class Action
Settlement ("Lead Pls.' Mem. For Final Approval") 4-5, dkt. 82).
Plaintiffs filed an initial Motion for Preliminary Approval of
Class Action Settlement on September 8, 2016, which included an
executed settlement agreement. (Dkt. 70.). They filed an Amended
Motion for Preliminary Approval on June 6, 2017, which included
an amended settlement agreement. (Dkt. 74.).

     In an Order of July 13, 2017, this Court:

     (1) granted preliminary approval of the Settlement;

     (2) provisionally certified the Settlement Class for
     settlement purposes only;

     (3) appointed Settlement Class Counsel and Plaintiffs to
     represent the Settlement Class;

     (4) approved the Parties' proposed Notice Program and forms
     of Notice, and directed that Notice be disseminated to the
     Settlement Class pursuant to the Notice Program;

     (5) approved the Parties' proposed Claim Form, and approved
     the procedures set forth in the Settlement Agreement for

persons in the Settlement Class to submit claims, exclude
themselves from the Settlement Class, and object to the
Settlement;

(6) appointed Rust Consulting, Inc., as the Settlement
Administrator to conduct the duties assigned to that
position in the Agreement; and

(7) stayed this Action pending Final Approval of the
Settlement.

(Dkt. 75).

The Court defined the Settlement Class as "all persons or
entities in the United States who received an IRS Form 1099 from
Citibank as a result of opening a Citibank deposit account and
receiving AA Miles through Citibank promotions in which Citibank
valued the AA Miles at 2.5 cents per mile, during the period
between January 1, 2009 and the date of entry of the Preliminary
Approval Order [July 13, 2017]." (Sporn & Kelly Decl., dkt. 83,
¶ 19).

Under the Settlement, Citibank identified Settlement Class
Members based on Citibank's reasonably available computerized
account records and provided a Class List of those individuals
and their addresses to the Settlement Administrator. After
accounting for duplicate names, the Class List consisted of
7,157 individuals. (Id. ¶ 20).

4

Under the Settlement, Citibank agreed to pay up to $1,750,000 to satisfy settlement awards. Settlement Class Members who submitted valid claims will receive settlement awards as follows:

(a)  If a Settlement Class Member submitted a Valid Claim affirming, under penalty of perjury, that: (i) the Settlement Class Member reported to the IRS the income attributable to the receipt of AA miles set forth in his or her AA Miles Form 1099, (ii) the Settlement Class Member paid taxes on the income attributable to the receipt of AA miles set forth in his or her AA Miles Form 1099, and (iii) the Settlement Class Member's federal tax rate at the time he or she paid taxes on the income is attributable to the receipt of AA miles set forth in his or her AA Miles Form 1099, then that Settlement Class Member will receive a Settlement Award calculated as follows: seventy percent (70%) of the amount of the income attributable to the receipt of AA miles reported on the Settlement Class Member's AA Miles Form 1099 multiplied by the Settlement Class Member's federal tax rate;

(b)  If a Settlement Class Member submits a Valid Claim that does not contain the affirmations set forth

5

above, that Settlement Class Member will receive a
Settlement Award of $40.

   To determine a Settlement Class Member's applicable federal
tax rate, the Claim Forms requested the Settlement Class Member
to select one of the following options: 10%, 15%, 25%, 28%, 33%,
35%, and "unknown." In the event that a Settlement Class Member
did not select a federal tax rate or selected "unknown," that
Settlement Class Member's federal tax rate would be calculated
at 12.5%. (Id. ¶ 21).

   Separately, Class Counsel has moved for attorneys' fees and
expenses of $1,200,000, and for a service award of $25,000 for
Class Representative Plaintiff Bertram Hirsch and $12,500 for
Class Representative Plaintiff Igor Romanov. (Dkt. 76). Awards
for attorneys' fees and class representative service awards do
not come out of the $1.7 million dollar settlement pool and are
paid separately by Defendant. (Settlement Agreement §§ 2.26,
3.1, 7.2).

   C. Settlement Response

   The Claims Administrator sent out 7,157 Postcard notices to
potential Class Members. (Sporn and Kelly Decl. ¶ 25). The
Settlement Administrator also established a Settlement Website
and toll-free number. (Id. ¶ 26-27). The Settlement Website had

over 20,000 unique visitors and 350 calls were made to the toll-free number. (Id. ¶ 30). The Settlement was also reported on class action websites, www.topclassactions.com and www.classactionrebates.com. Over 8,000 visits to the Settlement Website originated through links on these class action websites. (Id. ¶ 32).

Settlement Class Members were required to submit claim forms via the Settlement Website or mail on or before November 27, 2017 in order to receive a Settlement Award. Approximately 2,500 people filed claims who the Class Administrator determined were not Settlement Class Members and will not receive any money from the Settlement. (Id.). 955 valid and timely Claims were submitted by Settlement Class Members. (Id. ¶ 32).

There have been no requests for exclusion ("opt-outs") from the Settlement Class, and there have been no objections to the settlement itself. (Id. ¶ 34-35).

The Court received one objection to Plaintiffs' requested service awards from Defendant Citibank on January 17, 2018. (Obj. of Citibank, N.A. to Plaintiffs' Requested Service Awards ("Citibank Objection"), Dkt. 84). Citibank argues that the requested awards of $25,000 and $12,500 are "excessive and unjustified." (Id.).

## II.  Rulings

### A. Class Certification and Approval of the Settlement

| CLASS CERTIFICATION | | |
|---|---|---|
| In order to certify the class as defined by Plaintiffs the Court will consider the criteria of Federal Rule of Civil Procedure 23(a) and (b). | | |
| **COURT FINDING** | **EVIDENCE FROM SUBMISSIONS** | **LEGAL REQUIREMENT(S) SATISFIED** |
| **The class is so numerous that joinder of all members is impracticable.** | Lead Pls.' Mem. For Final Approval at 20 ("Joinder of the thousands of Class members that received Form 1099s is impracticable; therefore, the numerosity requirement is met here."). <br><br> See also Compl. ¶ 48 ("At this time, Plaintiffs believe that the Class includes tens of thousands of members."). | FRCP 23(a)(1) |
| **The Court finds that there are questions of law or fact common to the class.** | Lead Pls.' Mem. For Final Approval at 21 ("Here, there are many common issues of fact and law, including whether Defendant's representations regarding their promotional offers are false and misleading, whether | FRCP 23(a)(2) |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | consumers have been misled and deceived by Defendant's actions, whether Defendant's conduct constitutes violations of various states' consumer protection laws, whether Plaintiffs and other Class members have been injured and the proper measure of their losses as a result of those injuries, and whether Plaintiffs and Class members are entitled to injunctive, declaratory or other equitable relief."). | |
| **The Court also finds that under Rule 23(b)(3), these questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.** | Lead Pls.' Mem. For Final Approval at 23-24 (Here, Citibank's liability turns on whether its action in failing to disclose the tax consequences of its promotional airline mile offers was deceptive and misleading, and every Settlement Class Member's claim may be proven by the same set of facts. Even if the measure of damages differs among Settlement | **FRCP 23(b)(3)** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | Class members, when common questions of law or fact predominate regarding liability, 'the existence of individual questions as to damages is generally unimportant.' <u>Guzman v. VLM, Inc.</u>, No. 07-1126, 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008). In addition, the Settlement Class satisfies Rule 23(a)'s requirements, which 'goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality.' <u>Rossini v. Ogilvy & Mather, Inc.</u>, 798 F.2d 590, 598 (2d Cir. 1986) (citation omitted)). | |
| **The Court finds that the claims or defenses of the representative parties are typical of the claims or defenses of the class.** | Lead Pls.' Mem. For Final Approval at 21-22 ("Here, the Plaintiffs' claims and those of the members of the Settlement Class arise from the same conduct. Plaintiffs allege that Citibank offered promotional airline miles as a result of purchasing | **FRCP 23(a)(3)** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | its service and failed to disclose that customers would have to pay taxes on the receipt of the airline miles at a value of 2.5 cents per mile. Plaintiffs allege that these are material misrepresentations that caused them injury because they would not have purchased the services had they known that they would have to pay taxes on the receipt of airline miles. Plaintiffs allege that they were damaged in the amount of the tax liability created as a result of the issuance of the Form 1099. This same conduct caused the same injury to members of the Settlement Class. Moreover, Citibank's alleged misrepresentations regarding their promotional airline mile offers would be material to any reasonable consumer."). | |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **The Court finds that the representative parties will fairly and adequately protect the interests of the class.** | Lead Pls.' Mem. For Final Approval at 22 ("Here, there is no indication that Plaintiffs have any interests antagonistic to the Settlement Class. To the contrary, Plaintiffs have actively protected the interests of the Class. They engaged in the prosecution of this matter since its inception, have consistently conferred with their counsel, reviewed the complaint, responded to document requests and interrogatories, appeared for a deposition, scheduled another deposition, appeared for testimony in a bench trial, attended hearings, and continuously consulted with counsel throughout a four-year litigation, including working on the Settlement. Moreover, Plaintiffs' attorneys are qualified, experienced and able to conduct the litigation."). | **FRCP 23(a)(4)**<br><br>**Also satisfies <u>Goldberger</u> Factor 4: The Quality of the Representation, and second half of Procedural Fairness standard: Class Counsel's Experience and Ability.** |

Having found that all of the criteria set forth in Federal Rule of Civil Procedure 23 are satisfied, THE CLASS CERTIFICATION IS HEREBY FINALLY CONFIRMED.

**FAIRNESS**

Under Federal Rule of Civil Procedure 23(e), to grant final approval of a settlement, the Court must determine whether the proposed settlement is fair, reasonable and adequate. In making this determination, the Court must review both the procedural and substantive fairness of a proposed settlement. To find a settlement procedurally fair, the Court must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations, and that Plaintiffs' Counsel possessed the experience and ability, and engaged in the discovery necessary for effective representation of the classes' interests. To find a settlement substantively fair, the Court reviews the nine Grinnell Factors. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| PROCEDURAL FAIRNESS The settlement resulted from "arm's-length negotiations." Class Counsel possessed the requisite amount of experience and ability, and the parties engaged in the discovery necessary for effective representation of the Classes' interests. | Arm's-Length Negotiations and Class Counsel's Experience and Ability Lead Pls.' Mem. For Final Approval at 4-5 ("After an approximate 12-hour session with Lawrence Pollack, a highly-experienced mediator at JAMS, the parties signed a memorandum of understanding, agreeing to the principal terms of the Settlement. The parties spent several more months negotiating the details of the Settlement."). Id. at 22 ("Moreover, Plaintiffs' attorneys are | Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | qualified, experienced and able to conduct the litigation."). | (quoting Manual For Complex Litigation (Third) § 30.42 (1995)). |
| | **The Parties have engaged in discovery necessary for effective representation of the Classes' interests.** Id. at 4 ("The parties engaged in extensive merits discovery. Citibank produced over 65,000 pages of documents. Plaintiffs also produced documents concerning the merits of the case. The parties scheduled a second round of depositions for Plaintiffs and a deposition of the Citibank executive with the most knowledge of the alleged wrongdoing. Plaintiffs also subpoenaed American Airlines for documents and negotiated with American Airlines for the deposition of a relevant American Airline employee based in Texas."). | D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)). Also satisfies Grinnell Factor 3 (The Stage of the Proceedings and Amount of Discovery Completed) and Goldberger Factor 1 (Time and Labor Expended by Counsel) and Factor 4 (Quality of the Representation). City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **SUBSTANTIVE FAIRNESS** Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the nine **Grinnell** Factors: | | |
| **(1) Litigation is complex, and would likely be costly and lengthy in duration. The Court finds Grinnell Factor 1 and Goldberger Factor 2 satisfied on these facts.** | **Complexity, Expense and Likely Duration** Lead Pls.' Mem. For Final Approval at 13 ("The Settlement Class includes consumers located in various states throughout the country. Having to engage in motion practice with respect to the consumer protection laws of the various states would be extremely time consuming and expensive. Sporn-Kelly Decl., ¶ 37. Moreover, continued merits litigation would necessitate numerous additional depositions, including that of Plaintiffs, Citibank's personnel, American Airlines personnel, and expert witnesses for both named Plaintiffs and Citibank. Further, absent an approved settlement, the parties in the action will be forced to continue litigation, which will burden the Court. The resulting fact-intensive trial will also result in significant expenses to all parties. Any judgment will | **Grinnell Factor 1: The complexity, expense and likely duration of the litigation.** **Also satisfies Goldberger Factor 2: The magnitude and complexities of the litigation.** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | likely be appealed, extending the costs and duration of the litigation."). | |
| **(2) The reaction of the class to the settlement has been positive.** | Lead Pls.' Mem. For Final Approval at 2 ("The response of Settlement Class Members has been overwhelmingly positive.  Approximately 1,000 Settlement Class Members filed Valid Claims and will receive a settlement award.  No Settlement Class Member objected to or requested exclusion from the Settlement."). | **Grinnell** Factor **2: The reaction of the class to the settlement.** **D'Amato v. Deutsche Bank, 236 F.3d 78, 86-87 (2d Cir. 2001) (finding that district court properly found that the small number of objections (eighteen objections and seventy-two requests for exclusions after 27,883 notices were sent) weighed in favor of settlement).** |
| **(3) Proceedings have progressed and sufficient discovery has been completed to understand Plaintiffs' claims and negotiate** | Lead Pls.' Mem. For Final Approval at 14 ("Moreover, Settlement Class Counsel and Defendant have engaged in substantial merits discovery prior to settlement negotiations, including the detailed production and review of tens of thousands | **Grinnell** Factor **3: The stage of the proceedings and the amount of discovery completed.** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| settlement terms. | of pages of relevant documents."). | |
| (4), (5), and (6) The risks of litigation – including establishing liability, establishing damages, and maintaining the class action through trial – are significant. | Lead Pls.' Mem. For Final Approval at 15 ("Defendant also likely will argue that damages are not provable on a class-wide basis and that as a result there will be too many individual issues as to each class member's damage such that class certification is not appropriate, potentially limiting the certification of the class for liability purposes only. Sporn-Kelly Decl., ¶ 42. Both Plaintiffs and Defendant will also likely move for summary judgment, with no guarantee of success.  Further, if the summary judgment stage is not successful, Plaintiffs will be required to proceed through a costly and time consuming trial with no success guaranteed. Id. ¶ 43.").<br><br>Id. ("Defendant likely will argue Plaintiffs will not be able to show damages on a class-wide basis because Plaintiffs cannot show how much tax each class member paid as a result of the Form 1099. Class members likely have different tax brackets and some did not report the Form 1099 to the IRS at all."). | Grinnell Factor 4: The risks of establishing liability.<br><br>Grinnell Factor 5: The risks of establishing damages.<br><br>Grinnell Factor 6: The risk of maintaining the class action through the trial.<br><br>The Court's findings on Grinnell Factors 4, 5 and 6 also satisfy Goldberger Factor 3: The risk of the litigation. |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
|  | <u>Id.</u> at 16 ("Defendant most certainly will raise what it claims are individual reliance, causation and damages issues. A class determination outside of settlement proceedings will require extensive and expensive briefing by both parties, the outcome of which is by no means assured."). |  |
| **(7) Defendants' ability to withstand a greater judgment may be present, but this factor alone is not dispositive under <u>Grinell</u>.** | Lead Pls.' Mem. For Final Approval at 19 ("While Plaintiffs have no concern that Citibank has the ability to satisfy any judgment in this case, there is no certainty. In any event, a 'defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.' <u>In re Austrian and German Bank Holocaust Litig.</u>, 80 F. Supp. 2d at 178 n.9."). | **<u>Grinell</u> Factor 7: The ability of the Defendants to withstand greater judgment.** |
| **(8) and (9) The settlement is reasonable in light of: (a) Plaintiffs' best possible recovery, and (b) the attendant risks of litigation.** | Lead Pls.' Mem. For Final Approval at 17 ("Here, there are a broad range of potential recoveries if the case were to be litigated to judgment by trial. On the one hand, Plaintiffs could prevail on their claims and recover the highest estimated amount of damage, which is 100% of the federal | **<u>Grinell</u> Factor 8: The range of reasonableness of the settlement fund in light of the best possible recovery.**<br><br>**<u>Grinell</u> Factor 9: The range of** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | taxes paid and any state taxes paid. On the other hand, Defendants could prevail on their legal arguments to defeat liability entirely or defeat class certification, resulting in no recovery for Class Members. Given this broad range, the Settlement Agreement provides a substantial recovery, including sizable refunds to consumers without production of their tax returns, and effective notice to the Class that falls well within the range that courts have traditionally found to be fair and adequate under the law. Sporn-Kelly Decl., ¶ 32. Moreover, the fact that the Settlement provides for a prompt payment to claimants favors approval of the settlement."). | **reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.** |

**Having considered the procedural and substantive factors, the Court finds the proposed settlement to be fair, reasonable and adequate under Federal Rule of Civil Procedure 23 and THE SETTLEMENT IS HEREBY APPROVED.**

B. Attorneys' Fees and Expenses

District Courts have a duty "to act as a fiduciary who must serve as a guardian of the rights of absent class members," City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1099 (2d Cir.

1977). This duty involves a "searching assessment" of attorneys'
fees, "eschew[ing] any rubber stamp approval in favor of an
independent evaluation." Goldberger v. Integrated Res., Inc.,
209 F.3d 43, 52 (2d Cir. 2000); Grinnell 495 F.2d at 462. "[T]he
fees awarded in common fund cases may not exceed what is
'reasonable' under the circumstances. . . . What constitutes a
reasonable fee is properly committed to the sound discretion of
the district court." Goldberger, 209 F.3d at 48 (internal
citation omitted).

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| To ensure the appropriateness of attorneys' fees and costs, the Court will now review the six Goldberger criteria. Goldberger v. Integrated Res. Inc., 209 F.3d 43, 50 (2d Cir. 2000). | | |
| ATTORNEYS' FEES<br><br>The Second Circuit has recognized that a district court may calculate reasonable | Mem. of Law in support of Class Counsel's Motion for Approval of Attorneys' fees, Reimbursement of Litigation Expenses and Service Awards to Class Representatives | |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **attorney fees by either the lodestar method or the percentage method.** <u>Goldberger</u>**, 209 F.3d at 50. The proposed attorneys' fee, calculated here according to the percentage method, is reasonable. No matter which method is chosen, District Courts should be guided by the six traditional** <u>Goldberger</u> **criteria in determining a reasonable common fund fee.** <u>Goldberger</u>**, 209 F.3d at 50.** <br><br> **The six Goldberger Factors are:** | ("Lead Pl.'s Mem. In Support of Attorneys' Fees") 1 ("Class Counsel for the Settlement Class in this action respectfully submit this memorandum in support of Class Counsel's Application, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), for an award of Attorneys' Fees in the amount of $1,179,504.93 . . . ."). | |
| **(1) Counsel has expended considerable time and labor on behalf of Plaintiffs.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 8 ("Class Counsel devoted a total of 2,032 hours prosecuting this litigation and negotiating its settlement. K&S Decl. at ¶ 25. These hours do not | <u>Goldberger</u> **Factor 1: The time and labor expended by counsel.** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | include time spent in preparing and filing this motion and also does not include extensive additional time Class Counsel will commit in obtaining final approval of the Settlement. The hours devoted by Class Counsel, and the accompanying time charges, as set forth in chart attached as Exhibits K and L to the K&S Decl., all satisfy the legal standards for this Court to grant the attorneys' fees requested herein. These efforts have resulted in a total lodestar of $1,183,876.50."). | |
| **(2) The litigation is complex and of large magnitude.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 8-9 ("The hours spent on this case are reasonable given the magnitude and complexity of this nationwide consumer fraud litigation and the fact that it not only involved seminal issues of consumer fraud class action jurisprudence, but also involved complex tax reporting issues and the work-up of the case from inception through substantial discovery involving, among other things, review of thousands of pages of documents and the taking of numerous depositions, extensive litigation, including a full trial concerning mandatory | **Goldberger Factor 2: The magnitude and complexities of the litigation.** **The Court's findings regarding Grinnell Factors (3)-(6) also support Goldberger Factor (2).** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | arbitration provisions and class action waivers, multiple appeals before the Second Circuit, and mediation. A detailed description of the work performed by Class Counsel is provided in the K&S Decl. at ¶ 15."). | |
| **(3) The risks of litigation for Plaintiffs are substantial.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 12 ("There can be little question in the present case that Class Counsel faced risk throughout this litigation. A number of difficult issues, the adverse resolution of some of which could have doomed the successful prosecution of the action, were present here; indeed, on some of the core issues, by dint of their continued pressing the case and showing their unquestionable intention to litigate to a successful result –on a national class basis – Class Counsel obtained the relief that had been sought from the very beginning. In short, Class Counsel accepted the risk that they could prosecute this complex case for years, yet ultimately receive nothing for their efforts."). | **Goldberger Factor 3: The risk of litigation.**<br><br>The Court's findings regarding <u>Grinnell</u> Factors (4)-(6) and (9) also support <u>Goldberger</u> Factor (3). |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| **(4)Representation of class counsel is of high quality.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 13 ("Class Counsel has extensive experience in class actions, particularly those involving alleged consumer frauds. . . . In addition, Class Counsel, respectfully submit that they conducted themselves in this action in a professional, diligent manner. There was no duplication of effort and the bulk of the work was performed by a small number of attorneys fully familiar with the factual and legal issues presented by this litigation. The litigation efforts were focused on the main goals and undertaken to avoid waste. Class Counsel, moreover, were able to work efficiently in this case. As set forth above, the services rendered by Class Counsel were rendered efficiently and expeditiously, reflecting their knowledge and practical experience in litigating claims of this nature."). | <u>Goldberger</u> **Factor 4: The quality of representation.** |
| **(5) The requested attorneys' fees are reasonable in relation to Parties' settlement.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 3 ("Class counsel estimates that total benefits provided as a result of their work in this litigation amounts to approximately $11,750,000 | <u>Goldberger</u> **Factor 5: The requested fee in relation to the settlement.**<br><br><u>See also</u> |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | million, which does not include attorneys' fees and expenses, and the cost of administrating this settlement, both of which Class Counsel has negotiated that Citibank will separately pay. . . . Class Counsel believe that in light of the benefits obtained by the litigation and the extensive 6+ years of work that Class Counsel undertook to obtain the favorable rulings that brought about these benefits, their requested fee award of $1,179,504.93, which amounts to a lodestar that is less than the time that Class Counsel has committed to this matter, is fair and reasonable."); | **Goldberger**, 209 F.3d at 50 (stating that "the lodestar remains useful" and "we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."); **In re Hi-Crush Partners L.P. Securities Litig.**, No 12-Civ-8557, 2014 WL 7323417, at * 12 (S.D.N.Y. Dec. 19, 2014) ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund.") (collecting cases). |
| **(6) Requested attorneys' fees are not contrary to public policy.** | Lead Pl.'s Mem. In Support of Attorneys' Fees at 13-14 ("Important public policy considerations also support approval of the requested | **Goldberger Factor 6: Public policy considerations.** |

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| | fees. In considering attorneys' fees, courts are mindful that such awards serve the dual purpose of encouraging representatives acting as "private attorneys' general," to seek redress for damages to entire classes of persons and discouraging future misconduct of a similar nature. . . . ). Patently, this has been such a litigation from the beginning and this consideration should apply with considerable force in this case."). | |
| **ATTORNEYS' EXPENSES**<br><br>**The Court finds that expenses in this matter are reasonable.** | Lead Pl.'s Attorneys' Fees Mem. At 15 ("Class Counsel have incurred out-of-pocket costs and expenses in an aggregate amount of $20,495.07 in prosecuting this litigation on behalf of the class. See K&S Decl. ¶ 16. Class Counsel is entitled to reimbursement for various standard out-of-pocket expenses that an attorney would ordinarily bill a fee paying client."). | **"[I]t is well established that expenses are properly recovered by counsel."** In re Hi-Crush Partners L.P. Securities Litig., No. 12-Civ-8557, 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014). |

Having conducted the Goldberger analysis, the Court finds the

| COURT FINDING | EVIDENCE FROM SUBMISSIONS | LEGAL REQUIREMENT(S) SATISFIED |
|---|---|---|
| requested attorneys' fees of $1,179,504.93, including reasonable and necessary expenses of $20,495.07, to be reasonable and the attorneys' fees are HEREBY APPROVED. | | |

C. <u>Service Awards and Citibank's Objection</u>

Class representatives Hirsch and Romanov seek service awards of $25,000 and $12,500 respectively. (Kelly & Sporn Attorney Fees Decl., dkt. 80, ¶ 31). Defendant Citibank objects to the requested service awards as unduly high. (Dkt. 84). Citibank argues that such awards considerably exceed the settlement payment that other Class Members will receive (on average, less than $120). (<u>Id.</u> at 1).

"Incentive awards are not uncommon in class action cases and are within the discretion of the court." <u>In re AOL Time Warner ERISA Litig.</u>, No. 02 CV 8853 (SWK), 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007) (internal quotations omitted). Service awards to class representatives "while not foreclosed, should be closely scrutinized." <u>Silberblatt v. Morgan Stanley</u>, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007). "The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and

27

continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery." <u>Roberts v. Texaco, Inc.</u>, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

Indeed, when evaluating requests for awards, courts have routinely questioned whether "special circumstances" are present warranting such award. <u>Id.</u>; <u>Women's Comm. For Equal Emp't Opportunity (WC=EO) v. Nat'l Broad. Co.</u>, 76 F.R.D. 173, 181-182 (S.D.N.Y. 1977).

Just as with the <u>Roberts</u> case, "[s]pecial circumstances are amply evident here." <u>Roberts</u>, 979 F. Supp. at 202.

Mr. Hirsch initiated the investigation of this case and remained active in the case through more than five years of litigation. He used his own legal skills to review and edit memoranda submitted to the Court; he responded to interrogatories and requests for production of documents; he sat for a deposition; he testified for one day and attended the entirety of a hearing before this Court. (Kelly & Sporn Attorney Fees Decl., dkt. 80, ¶¶ 35-39). He also conducted his own research on the value of AA miles and arbitration requirements. (<u>Id.</u> at ¶ 42-43). Mr. Hirsch estimates that he has spent at

least 127 hours of time on behalf of the Class, and 80 hours in attorney-telephone consultations and conference calls with Class Counsel. (Id. at ¶ 44). Mr. Hirsch is awarded $25,000 for these extraordinary efforts.

Mr. Romanov also contributed meaningfully to the settlement. He contacted Citibank on his own prior to the filing of this Complaint. (Id. at ¶ 46). As Lead Plaintiff, he responded to multiple document requests and interrogatories, sat for a deposition, and reviewed and edited various other documents integral to this case. (Id. at ¶ 48). He estimates that he spent 67.5 hours contributing to this case. (Decl. of Igor Romanov, Ex. A, 2, dkt. 79). Mr. Romanov is awarded $12,500 for his efforts.

These incentive awards are similar to the awards Courts have awarded in comparable cases. $25,000 was awarded in both REMD International v. Sloan Supermarket, No. 94 CIV. 5587 (PKL) (RL), 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003), and Dupler v. Costco Corp., 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010). $50,000 was awarded in Dial Corp. v. News Corp., 317 F.R.D. 426, 438-39 (S.D.N.Y. 2016), and $15,000 was awarded in In re Currency Conversion Fee Antitrust Litigation, 263 F.R.D. 110, 131-32 (S.D.N.Y. 2009), aff'd sub nom. Priceline.com, Inc. v. Silberman, 405 F. App'x 532 (2d Cir. 2010).

Out of a class member fund of up to $1.7 million dollars in this case, only about $115,000, or 6.76% of potential claims, is being paid out.

The Court awards Hirsch and Romanov's requests of $25,000 and $12,500 respectively and overrules Citibank's objection.

III. Conclusion

The Fairness Hearing of January 31, 2018 and this Memorandum and Order constitute the Court's findings and rulings in this matter.

This Action is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to terminate all open Motions and close the docket in this case.


SO ORDERED.

Dated:     New York, New York
           March 26, 2018


_Deborah A. Batts_
Deborah A. Batts
United States District Judge